STATE v. EDWIN G. MOORE, II. (INDICTMENTS Nos. 23, 24 AND 25). (THREE CASES CONSOLIDATED FOR THE PURPOSE OF TRIAL AND APPEAL).

(Filed 23 September, 1964.)

1. **Arson § 4— Circumstantial evidence of guilt of arson held sufficient to be submitted to jury.**

    The circumstantial evidence in this case, including evidence tending to show that defendant was heavily involved in debt and had certain cottages and a hotel, owned by him and operated as a unit, grossly over-insured, that some 33 hours after defendant left the unoccupied property fire was discovered in two of the cottages and before it could be brought under control fire broke out on the top floor of the hotel, and that after the fire in the hotel had been extinguished firemen found in various places in the hotel four candles which had been burning some 33 hours, that each candle had the wax about one inch from the base cut through to the wick and paper inserted in the slit in each candle and extending some several inches from the sides of the candles to other combustibles, *is held* sufficient to be submitted to the jury on the question of defendant's guilt in a prosecution for violating G.S. 14-62.

2. **Criminal Law § 99—**

    Only evidence favorable to the State is considered on motion to dismiss.

3. **Criminal Law § 48—**

    It is error to permit an investigating officer to testify that defendant refused to make any statement after accusation, and then permit the officer

431

to testify as to the incriminating circumstances he recounted to defendant and that he stated that he and his assistant firmly believed defendant guilty, since the statement by the officer of the belief of guilt cannot be interpreted as an admission of guilt by defendant, either directly or by implication.

**4. Same—**

Silence in the face of an accusation of guilt is competent as an implied admission only when a person who has firsthand knowledge makes an accusation based thereon in defendant's presence under circumstances calling for a denial if the accusation be untrue, and silence in the face of an accusation by an investigating officer is incompetent, defendant not being required to defend himself to an investigating officer.

**5. Criminal Law § 39—**

Where, in a prosecution for arson, the State has introduced evidence that candles, with a cut through the wax near the base, with paper inserted in the cuts and extending beyond the candles to other inflammables, were found burning in defendant's property, and has introduced testimony that in a test fire spread to the inflammables around such candles, it is competent for defendant to offer evidence of his expert witness, from knowledge and after tests, that the contraption would probably not start a fire.

APPEAL by defendant from *Copeland, S. J.,* April, 1963 Special Criminal Term, DARE Superior Court.

These criminal prosecutions were based on three bills of indictment: No. 23 charged that the defendant on April 25, 1961, unlawfully, feloniously and for the fraudulent purpose of collecting insurance did set fire to and burn two uninhabited houses designated as Cottages Nos. 1 and 2, situate near the Flagship Hotel in Dare County. No. 24 charged that the defendant on the same day and for the same purpose did set fire to and burn the Flagship Hotel. No. 25 charged that the defendant on the same day and for the same purpose did attempt to set fire to Cottage No. 3, or the middle cottage near the Flagship Hotel. All indictments charged that the title to the properties were in the defendant and his wife and were in their possession. The indictments were drawn under and in accordance with G.S. 14-62.

After arraignment and the entry of pleas of not guilty, the cases were consolidated and tried together. At the conclusion of the evidence for the State, verdict of not guilty was entered by the court as to the charge laid in indictment No. 23. Likewise, at the conclusion of all the evidence the court entered a verdict of not guilty as to the first count in No. 25.

The jury rendered verdicts of guilty on the charge of burning the Flagship Hotel and of attempting to burn the middle cottage. From judgments of imprisonment to run consecutively for a total of not less

than 11 nor more than 15 years, and to pay costs, the defendant appealed.

*T. W. Bruton, Attorney General; Charles D. Barham, Jr., Assistant Attorney General for the State.*
*J. Henry LeRoy, G. Eric Rosden, Victor S. Bryant for defendant, appellant.*

HIGGINS, J. The four buildings involved in the indictments were closely connected, and were operated as a single summer resort unit at Nag's Head, North Carolina. Cottages Nos. 1 and 2 were located nearest the ocean; the Flagship Hotel farthest away, and the middle cottage between them.

In May, 1960, the defendant and his wife purchased the four units and the furnishings therein from Elizabeth Parkerson who, by agreement, during that summer operated them for the defendant and his wife, both of whom lived in Washington, D. C. The purchase price for the properties was $60,000.00, of which $18,000.00 was paid in cash and mortgages executed for $48,000.00. At the time of the purchase, the buildings and furnishings were insured for $48,000.00. Evidence tended to show that they were worth about $40,000.00 and the land was worth $20,000.00.

At the end of the resort season a dispute arose involving Mrs. Parkerson's operation of the properties. She threatened to foreclose her mortgage for the balance due. Court proceedings involving accounting and foreclosure were instituted. As of April 25, 1961, the defendant had increased the insurance coverage for the buildings and contents from $48,000.00 to $83,000.00. His application for additional coverage of $37,800.00 had been denied. The defendant's indebtedness in Dare County and for his home near Washington amounted to approximately $110,000.00.

At the end of the 1960 resort season the properties involved in these indictments were closed. On weekends the defendant frequently went to Nag's Head and worked in renovating, repairing, and cleaning up the properties. On at least three occasions he had John Henry Bynum accompany him from Washington to assist in the work. However, on the weekend of April 15, Bynum did not accompany him. So far as the evidence discloses, during that weekend he worked alone about the buildings. On April 21, the defendant and Bynum returned to Nag's Head and worked mainly in opening the buildings, airing the furniture, cleaning and painting the first floor of the hotel. Bynum worked on the ground floor and did not go to the second or third floors except just be-

fore closing, and then only to take a vacuum cleaner. Before closing, at about 7:30 on the after noon of the 23rd, the defendant and Bynum fastened all windows and blinds on the first floor of the hotel. However, some of the windows did not have blinds, and table cloths, rugs and bed clothing were nailed over these windows and over the glass in the door to prevent outsiders from observing the inside of the building. On prior occasions these extra precautions were not taken.

After completing the closing operations, Bynum went alone to the middle cottage to change clothes for the trip back to Washington. After the change, he stopped by a drugstore for a coca-cola. He went back to the drugstore after one for the defendant. Bynum testified he was away from the defendant during this time for about 10 minutes. The defendant testified that he and Bynum were not separated at any time. Both agreed they left for Washington about 7:30 p.m. on the 23rd.

At 4:30 a.m. on April 25, the Coast Guard discovered that Cottages Nos. 1 and 2 were on fire. Before the fire could be brought under control, both cottages were completely destroyed. While the members of the fire department were still on the scene, a fire broke out on the top floor of the hotel. Members of the fire department forced an entry and extinguished the fire which had caused damage to the top floor and to the roof. A five-gallon can of kerosene with the top missing was near enough to the flames on the third floor that the fluid was hot and smoking. A cap which fitted the can was found on the desk or filing cabinet on the first floor. After putting out the fire, the firemen found four lighted candles in the hotel: one in a closet on the third floor; one in a breezeway between the second and third floors; one in the kitchen on the first floor, and one in the storeroom near the kitchen. The firemen then forced an entry into the middle cottage and found a lighted candle surrounded by mattresses and bedding and other inflammables.

These five candles were about two inches in diameter. They were shown to have been manufactured by Will and Baumer, designed to burn for 72 hours, and intended for use in religious and funeral services. Each of these candles had a cut through the wax all the way to the wick about one inch from the bottom. Inserted in the slit in each case were pieces of paper extending several inches from the sides of the candles. The papers were secured to the candle by scotch tape. Immediately surrounding each candle, in contact with the paper taped to it, were other newspapers and combustible materials. All these candles were lighted at the time of discovery and had burned down to within about one inch of the inserted papers.

On the first floor of the hotel, on or about a desk, table and filing cabinet, the firemen found a. scotch tape dispenser still containing about one inch of tape similar to that which secured the paper inserts in the candles. A sharp knife and parts of the Sunday edition of the New York Times of March 5 and a pair of rubber gloves were on or in the desk.

The State Bureau of Investigation and Sheriff's Department conducted experiments with 72-hour candles similar (and similarly rigged) to those discovered in the hotel and in the middle cottage. When the candle burned to the inserted papers they and the surrounding combustible materials immediately caught on fire. A full length 72-hour candle would leave approximately one inch unburned after 33 hours. The inserts were approximately one inch from the bottom in the candles recovered still burning in the hotel and in the middle cottage. Approximately 33 hours had elapsed between the time the defendant left the hotel and the time the fire was discovered.

According to the State's theory, the defendant, heavily involved in debt, had the property grossly overinsured, prepared the candle fire sets during his visit alone on the weekend prior to the fire; that he brought Bynum with him the following weekend to be available as a witness in case he was a suspect, and that while Bynum was changing clothes and procuring the drinks, defendant lighted the candles, intending that the fires from them would occur many hours after he had returned to Washington and destroy all evidence of the manner in which the fire originated.

The defendant's theory was that an enemy, for revenge, actually planted the candles in the manner in which they were discovered for the purpose of pointing the finger of suspicion at the defendant; that the fire did not start from candles.

Admittedly, the State relied on circumstantial evidence. In such cases the rules for testing the quantum of proof necessary (1) to carry a case to the jury, and (2) thereafter to warrant the jury in returning a verdict of guilty, are set forth in State v. Thompson, 256 N.C. 593, 124 S.E. 2d 728; State v. Horner, 248 N.C. 342, 103 S.E. 2d 694; State v. Stephens, 244 N.C. 380, 93 S.E. 2d 431; State v. Simmons, 240 N.C. 780, 83 S.E. 2d 904; and State v. Johnson, 199 N.C. 429, 154 S.E. 730. Repeating the rules would serve no useful purpose here. When tested by these rules, we hold the evidence was sufficient to go to the jury and to survive the motion for a directed verdict of not guilty. The defendant's evidence is pertinent only on the question of guilt or innocence. Evidence favorable to the State is considered on motion to dismiss.

The defendant insists the trial court committed errors in admitting and excluding evidence over his objection. We deem it necessary to discuss only two instances.

Mr. Epps, an investigator of the State Bureau of Investigation, and Mr. A. T. Moore, an investigator in the State Fire Marshall's office, went to Washington on September 19, met with the defendant, and with respect to what took place at the meeting, Mr. Epps testified:

"Investigator Moore stated to the defendant Moore, at the beginning of the interview, that we came to Washington and thought we would come by and sit down and have a talk with him and give him an opportunity to make a statement of what had happened at his hotel down in North Carolina.

"Q. Now, what statement, if any, did you or Mr. Moore make to him accusing him of any responsibility with this fire as a result of your own investigation?

Objection — Overruled — Exception

Defendant's Exception #38.

"A. The defendant Moore then stated that 'I don't think it is proper to make a statement at this time.' We then told him that we had received candles and had them examined by the FBI Laboratory, and that in our opinion he was responsible for the fire, and he said, in substance, Do you think I set it on fire?

"COURT: Hold it just one minute. Stop right there and let me get that down. All right, go ahead.

"To the foregoing statement in the presence of the jury the defendant excepts.

"A. He said, 'You think I did it, don't you?' I said, 'Yes, sir, it is not any doubt in our minds that you are the man responsible for the fire at the Parkerson Hotel.' He stated, 'Well, what are you prepared to do at this time?' At that particular moment we didn't answer.

"Motion to strike the answer. Overruled — Exception.

Defendant's Exception #40.

"A. We made the accusation in different words on two other occasions during the interview. After the last accusation he stated again, 'What are you prepared to do? Did you come prepared to take me back to North Carolina if I make a statement or don't make a statement?' I said, 'Yes, sir, we came prepared to take you back whether you make a statement or not.'

Motion to strike — Overruled — Exception.

Defendant's Exception #43.

"A.   He did not say yes or no.

"Q.   He made no statement either way?

"Objection — Overruled — Exception — Defendant's Exception # 46."

After the defendant declined to make any statement, the court, by means of a question, permitted the officer to say, "We told him that we had received candles and had them examined by the FBI Laboratory and that in our opinion he was responsible for the fire . . ."

Not only did the court overrule the objection and permit the officer to make the statement about his and his assistant's firm belief, but stopped the proceedings until he could write down the question and the answer; thus inadvertently emphasizing the importance of the evidence. In addition, the court permitted the officer to say, "Yes, it is no doubt in our minds that you are the man responsible for the fire at Parkerson's Hotel." The court denied the defendant's motion to strike. The foregoing is challenged by defendants Assignment of Error No. 4, based on Exceptions 38, 39, 40 and 46. By no fair interpretation may the foregoing be considered an admission of guilt, either directly or by silence.

A suspect is not required to defend himself or prove his innocence to investigating officers. When they accuse him, he may decline their invitation to plead to their charge. Ordinarily, silence, or refusal or failure to deny may be shown only when an accusation is made in the presence of an accused — not by investigating officers who get their information second-hand — but only by someone who has first-hand knowledge and makes a charge based thereon which the occasion, the nature of the charge, and the surrounding circumstances would call for a denial if the accusation were untrue. *State v. Guffey,* 261 N.C. 322, 134 S.E. 2d 619; *State v. Temple,* 240 N.C. 738, 83 S.E. 2d 792; *State v. Wilson,* 205 N.C. 376, 171 S.E. 338. Assignment of Error No. 4 is sustained. The court committed error in permitting the officer to testify as the record discloses.

In support of his theory that the fire did not start from candles, the defendant offered the testimony of Mr. Prussing, admitted to be an expert in fire investigations involving petroleum products. The candles involved are largely petroleum products. He heard all the testimony, saw and examined the five candles found burning in the buildings. He made experiments and based on the assumption the jury should find

the candles had burned as shown and that they were rigged as shown, he offered to testify and would have testified, if permitted to do so, as follows:

> "Q. From your professional opinion as an expert, is it likely that a fire would result from this kind of contraption?

> "(If permitted, witness would have answered: 'Most likely not; I have tried it and it is my conclusion from the experiment that it is most unlikely.')

> "Q. Have you tried whether or not a contraption by experiment whether or not a contraption consisting of a candle of a two-inch diameter, candle with a cut around up to the wick near the bottom and with newspaper inserted, would light the newspaper outside the ring of the candle?

> "(If permitted, witness would have answered: 'It is my opinion, based on experiments and observation, that it would be unlikely for paper so inserted to burn outside of the ring of the wax. It will burn inside and then go out.')"

The State had introduced the candles in the settings in which they were found. The officers made a test and testified that the fire spread from the inserted papers to the combustible materials surrounding them. The defendant's expert witnesses, from knowledge and after tests, offered to testify that such a contraption would probably not start a fire. The exclusion of this evidence was error.

The long and tedious trial on the whole was ably conducted and in accordance with established and approved rules. However, for the two errors here discussed, the defendant is entitled to a

New trial.