275 S.E.2d 842 (1981)
STATE of North Carolina
v.
Claudie Clara DUVALL.
No. 801SC821.
Court of Appeals of North Carolina.
March 3, 1981.
Discretionary Review Allowed April 7, 1981.
*849 Atty. Gen. Rufus L. Edmisten by Asst. Atty. Gen. Elizabeth C. Bunting, for the State.
James, Hite, Cavendish & Blount by Marvin Blount, Jr., Greenville and Aldridge, Seawell & Khoury by G. Irvin Aldridge, Manteo, for defendant-appellant.
Discretionary Review Allowed by Supreme Court April 7, 1981.
HARRY C. MARTIN, Judge.
Defendant brings forward twenty-three assignments of error. For organizational purposes in this opinion, those arguments which we feel merit discussion will be grouped into subdivisions.
We note at the outset that in order to convict defendant of being an accessory after the fact under N.C.G.S. 14-7, the state must prove the following: (1) the felony has been committed by the principal; (2) the alleged accessory gave personal assistance to that principal to aid in his escaping detection, arrest, or punishment; and (3) the alleged accessory knew the principal committed the felony. State v. Atkinson, 298 N.C. 673, 259 S.E.2d 858 (1979); State v. Squire, 292 N.C. 494, 234 S.E.2d 563 (1977); State v. Martin, 30 N.C.App. 166, 226 S.E.2d 682 (1976). To prove the first element, the state in this case must show that the principal was driving the vehicle involved in an accident resulting in injury to or death of the victim, that the principal so knew, and *850 that he failed to stop his vehicle immediately at the scene. State v. Wilson, 264 N.C. 373, 141 S.E.2d 801 (1965); State v. Overman, 257 N.C. 464, 125 S.E.2d 920 (1962); State v. Fearing, 48 N.C.App. 329, 269 S.E.2d 245, cert. denied, 301 N.C. 99 (1980).

I.
Two of defendant's assignments of error concern the special venire called from Perquimans County. Defendant contends that Judge Brown erred in granting the state's motion for a special venire on 4 December 1979 after Judge Browning had denied such a motion on 7 June 1979. He argues that the order impermissibly overruled the other judge's earlier ruling.
It is true that one superior court judge ordinarily may not overrule a prior judgment of another superior court judge in the same case on the same issue. Calloway v. Motor Co., 281 N.C. 496, 189 S.E.2d 484 (1972); State v. McClure, 280 N.C. 288, 185 S.E.2d 693 (1972); Carr v. Carbon Corp., 49 N.C.App. 627, 272 S.E.2d 374 (1980). However, this rule is inapplicable to interlocutory orders, which do not determine the issue, but rather direct some proceeding preliminary to a final decree. Carr, supra. A motion for a special venire is a pretrial order, the granting or denial of which is within the trial court's sound discretion. N.C.Gen.Stat. 15A-958. See also State v. Yoes and Hale v. State, 271 N.C. 616, 157 S.E.2d 386 (1967). "Interlocutory orders are subject to change `at any time to meet justice and equity of the case upon sufficient grounds shown for the same." Calloway, supra, 281 N.C. at 502, 189 S.E.2d at 488. Therefore, when the circumstances have changed during the time between the original denied motion and the subsequent renewed motion, a trial judge may, in his discretion, grant the renewed motion in the interest of justice.
More than five months elapsed between the two motions for a special venire. The state presented additional and current evidence that defendant would not be able to receive a fair and impartial trial before a jury comprised of residents of Dare County, where he was a prominent citizen and where considerable publicity had occurred.
We hold that Judge Brown did not abuse his discretion by hearing and granting the renewed motion. Furthermore, in the same order, the court granted defendant's motion for a trial separate from codefendant Malcolm Fearing, which motion had previously been denied by a different superior court judge. As defendant was a beneficiary of the court's action, he is hardly in a position to complain of the propriety of that order.
Defendant contends that the court erred in denying his motion that a special venire be called from a county other than Perquimans. He argues that the earlier trial of Malcolm Fearing before jurors of that county, in addition to newspaper coverage of the trials, created prejudicial pretrial publicity.
As previously discussed, a motion for a special venire is addressed to the trial court's sound discretion. Its rulings will not be disturbed on appeal absent a clear showing of abuse. State v. Hopper, 292 N.C. 580, 234 S.E.2d 580 (1977); State v. Brower, 289 N.C. 644, 224 S.E.2d 551 (1976). Similarly, the trial judge is vested with broad discretion in determining the competency of the jurors. N.C.Gen.Stat. 9-14; State v. Noell, 284 N.C. 670, 202 S.E.2d 750 (1974), death penalty vacated, 428 U.S. 902, 96 S.Ct. 3203, 49 L.Ed.2d 1205 (1976). A party has no right to seat a particular juror, but only to reject one who is prejudiced against him. State v. Williams, 275 N.C. 77, 165 S.E.2d 481 (1969). See also State v. Corl, 250 N.C. 258, 108 S.E.2d 615 (1959).
We have carefully reviewed defendant's motion and the seventy-four pages of the record which contain the jury selection process and are satisfied that Judge Brown did not abuse his discretion in determining that the jurors from Perquimans County would afford defendant a fair trial. See Brower, supra. These assignments of error are overruled.

II.
Defendant assigns error to the denial of his motion for the trial judge's disqualification under N.C.G.S. 15A-1223. Defendant *851 asserts that he was deprived of a fair trial because the judge was biased against him, as he had presided over the earlier trial of codefendant Malcolm Fearing, where testimony that tended to incriminate the present defendant was heard. Defendant supports his theory by reference to other of his assignments of error, which he alleges demonstrate Judge Brown's actual bias during trial.
N.C.G.S. 15A-1223(b)(1), (4) provides:
(b) A judge, on motion of the State or the defendant, must disqualify himself from presiding over a criminal trial or other criminal proceeding if he is:
(1) Prejudiced against the moving party or in favor of the adverse party; or
....
(4) For any other reason unable to perform the duties required of him in an impartial manner.
As an impartial judge is a prime requisite of due process, a judge's personal interest in the outcome of a case is considered sufficient ground for his disqualification. Ponder v. Davis, 233 N.C. 699, 65 S.E.2d 356 (1951). But in the absence of substantial evidence in the record of personal interest or bias, a judge will not be required to recuse himself. Love v. Pressley, 34 N.C.App. 503, 239 S.E.2d 574 (1977), disc. rev. denied, 294 N.C. 441, 241 S.E.2d 843 (1978); In re Custody of Cox, 24 N.C. App. 99, 210 S.E.2d 223 (1974), cert. denied, 286 N.C. 414, 211 S.E.2d 793 (1975). Even in instances where a judge has presided over an earlier trial of the same defendant, he need not be disqualified absent evidence that the prior trial would have a prejudicial effect on the rulings and outcome of the present case. Love, supra; Perry v. Perry, 33 N.C.App. 139, 234 S.E.2d 449, disc. rev. denied, 292 N.C. 730, 235 S.E.2d 784 (1977). See also State v. Vega, 40 N.C.App. 326, 253 S.E.2d 94, disc. rev. denied, 297 N.C. 457, cert. denied, 444 U.S. 968, 100 S.Ct. 459, 62 L.Ed.2d 382 (1979); Cox, supra.
Defendant contends that certain comments made by the judge in the presence of the jury and his refusal to recess upon defendant's motion illustrate Judge Brown's actual prejudice toward defendant and created an unfavorable atmosphere during the course of the trial. During jury selection, after counsel for defendant had apparently used all his peremptory challenges, counsel approached the bench and requested permission to challenge a juror out of the presence of the other jurors. The court denied defendant's motion and announced his decision before the jurors. From the record, we find that Judge Brown followed the jury selection procedure outlined in N.C.G.S. 15A-1214, which makes no provision for in-chambers or bench conference rulings on a juror's competence. No special circumstances are evident which would have justified defendant's motion, and Judge Brown properly exercised his discretion in so denying it.
During direct examination, defendant had embarked upon an irrelevant topic and Judge Brown admonished him not to volunteer answers. Defendant argues this incident also demonstrates the judge's prejudice toward him. The judge's warning was entirely proper. See State v. Herbin, 298 N.C. 441, 259 S.E.2d 263 (1979); State v. Chandler, 30 N.C.App. 646, 228 S.E.2d 69 (1976). We do not find that Judge Brown's comments constituted an impermissible expression of opinion. The trial judge has a duty, as well as a right, to conduct the trial in an orderly, efficient manner. See State v. Frazier, 278 N.C. 458, 180 S.E.2d 128 (1971).
Defendant also insists that the judge's denial of his motion to recess showed bias against him. Additionally, he asserts that the extended courtroom hours deprived him of effective assistance of counsel by abridging preparation time between sessions. We find that Judge Brown was well within his discretion in continuing this lengthy trial into the evening hours, to maintain its momentum in the interest of the efficient administration of justice. See Frazier, supra. These assignments of error are without merit.

III.
Defendant assigns error to numerous portions of the testimony which were admitted *852 over his objections or refused admission upon sustention of the prosecutor's objections.
Defendant first contends that the trial court erred in overruling his objections to a series of questions directed to trooper Bonner regarding defendant's actions at the scene where the body was discovered. During direct examination, Bonner testified that defendant had not said anything to him about the post, about his having seen the body earlier, or about his being at Charles Fearing's house after the discovery of the body. Defendant contends these questions were leading and called for responses which were improper hearsay. He further contends his silence was used at trial to show his culpability, denying him of his fifth amendment rights.
The questions concerned defendant's conduct at the scene of the alleged crime. Conduct, in this case defendant's silence, is subject to exclusion as hearsay as an expression of the actor's thoughts. See 1 Stansbury's N.C. Evidence § 142 (Brandis rev. 1973). However, anything that a defendant has done that is relevant to the case and not subject to some specific exclusionary rule or statute may be used against him as an admission. 2 Stansbury, supra, § 167. "An admission may be implied or inferred from any conduct of a party which fairly indicates a consciousness of the existence of a relevant fact." 2 Stansbury, supra, § 178 (emphasis in original). While not sufficient standing alone, conduct may be considered in connection with other facts in determining whether it constitutes an admission. Id. Here, defendant's silence is relevant in that he failed to share his knowledge of facts concerning a crime with a fellow police officer who was investigating that crime. His silence under the circumstances implies his knowledge of or participation in a cover-up. Cf. State v. Lampkins, 283 N.C. 520, 196 S.E.2d 697 (1973) (evidence of flight as admission); State v. Wilson, 23 N.C.App. 225, 208 S.E.2d 393 (1974) (defendant's agreeing, but failing, to come to discuss accusations constituted evidence of admission where later efforts to locate him were unsuccessful).
"Silence alone, in the hearing of a statement, is not what makes it evidence of probative value, but it is in connection with some circumstance or significant conduct on the part of the listener that gives the statement evidentiary weight." State v. Evans, 189 N.C. 233, 235, 126 S.E. 607, 608 (1925). In the case sub judice, defendant's silence was not used to prove the truth of a statement made in his presence which he would have been expected to deny if it were false. Rather, it was part of the res gestae, the circumstances surrounding the crime. See State v. Cawthorne, 290 N.C. 639, 227 S.E.2d 528 (1976). Defendant was not then under arrest nor subject to interrogation. Therefore we find no merit in defendant's reliance on State v. Moore, 262 N.C. 431, 137 S.E.2d 812 (1964) (right to remain silent upon accusations of investigating officers), and State v. Guffey, 261 N.C. 322, 134 S.E.2d 619 (1964) (silence in face of incriminating statements are admissions only in limited circumstances). Additionally, the trial court has considerable discretion in allowing leading questions. State v. Harris, 290 N.C. 681, 228 S.E.2d 437 (1976); State v. Smith, 290 N.C. 148, 226 S.E.2d 10, cert. denied, 429 U.S. 932, 97 S.Ct. 339, 50 L.Ed.2d 301 (1976). We hold that these questions, and answers thereto, were not improperly allowed.
Defendant contends that the court should not have sustained the state's objections to questions on cross-examination of Bonner. Defendant argues Bonner's answers would have shown that he did not suspect defendant's involvement in the alleged cover-up. These objections were properly sustained, as Bonner's opinion as to defendant's guilt was irrelevant to the issue of whether defendant was actually involved. The question of his guilt or innocence was properly one for the jury. E.g., State v. Forrest, 262 N.C. 625, 138 S.E.2d 284 (1964). We further find no merit in defendant's argument that Bonner's testimony and portions of his notes from the investigation would have impeached his credibility. Bonner's answer, contained in the record, that he was at that time becoming suspicious that a cover-up might be *853 occurring, is not inconsistent with his statement that he had no suspects at the time he began investigating. Trooper Bonner's notes were not competent evidence, as "[r]eports of investigating officers are the work product of the prosecution, and there is no constitutional right to their examination." State v. Jones, 23 N.C.App. 686, 688, 209 S.E.2d 508, 510 (1974), cert. denied, 286 N.C. 418, 211 S.E.2d 218 (1975). Nor did defendant make a pretrial motion to examine the report. See Jones, supra. Furthermore, Judge Brown offered to allow the notes to be read into the record. Defendant's arguments are without merit.
Likewise, we find that the court committed no error in denying admission of statements of an SBI agent about whether defendant was a suspect. Defendant contends these statements would have shown that he cooperated in the investigation, negating his involvement in a cover-up. The answers contained in the record do not support defendant's theory. Even if they did, defendant's cooperation with investigators on 23 February would not demonstrate that he had not been involved at the time of the alleged cover-up, 19 and 20 February.
Defendant argues the court should have admitted evidence concerning whether he was willing to take a polygraph test, as demonstrative of his cooperation with the investigators. Again, such evidence is irrelevant to defendant's actions on 19 and 20 February. Furthermore, although test results themselves were not offered into evidence, this testimony would create an inference that defendant took and passed a polygraph test. Polygraph results are not admissible in this state. State v. Brunson, 287 N.C. 436, 215 S.E.2d 94 (1975); State v. Foye, 254 N.C. 704, 120 S.E.2d 169 (1961).
Defendant contends the court erred in sustaining the state's objection to a question concerning the height of the automobile's bumper if the brakes were applied. The state's expert witness had just testified that, normally, application of the brakes would cause the front end to dip. Counsel for defendant then asked the witness:
Q. If it could be shown that the front of the car was from three to four inches lower than seventeen inches at the time of the impact would it be your opinion that brakes had been applied?
OBJECTION. SUSTAINED.
. . . .
(The witness whispered his answer to the court reporter:
A. Under the proper conditions this could happen, yes.)
This question was improper because it was a hypothetical based on facts not in evidence. See State v. Bock, 288 N.C. 145, 217 S.E.2d 513 (1975), death penalty vacated, 428 U.S. 903, 96 S.Ct. 3208, 49 L.Ed.2d 1209 (1976); 1 Stansbury, supra, §§ 136, 137. There was no evidence that Charles Fearing had applied the brakes. In light of the witness's earlier testimony, even if the question had been proper, defendant was not prejudiced by the sustention of the objection.
Defendant argues that the court should have admitted the testimony of his expert witness, a psychiatrist, giving his definition of "panic" and his opinion of whether defendant suffered panic upon discovery of Creef's body.
Expert testimony and opinions are admissible on all matters where such testimony would be helpful to the jury because of the expert's superior knowledge. Hubbard v. Oil Co., 268 N.C. 489, 151 S.E.2d 71 (1966); 1 Stansbury, supra, § 134. In this case, the general definition of panic is one a layperson would know and understand, and no expert testimony is necessary. In State v. Wade, 296 N.C. 454, 462, 251 S.E.2d 407, 412 (1979), the Court articulated the general propositions regarding expert medical testimony to be:
(1) A physician, as an expert witness, may give his opinion, including a diagnosis, based either on personal knowledge or observation or on information supplied him by others, including the patient, if such information is inherently reliable even though it is not independently admissible into evidence. The opinion, of course, may be based on information *854 gained in both ways. (2) If his opinion is admissible the expert may testify to the information he relied on in forming it for the purpose of showing the basis of the opinion. Penland v. Coal Co., supra, 246 N.C. 26, 97 S.E.2d 432 [1957].
When information is given the doctor by the patient in the course of treatment, there exists an assumption that the patient's self-interest will ensure that the information is true, thus qualifying it for the basis of opinion testimony. Wade, supra.
Here, the record does not indicate that Dr. Ravaris was treating defendant as a regular patient with a view towards treatment or cure. Dr. Ravaris testified he met with defendant for an hour and a half on 9 April 1979, at which time defendant told him about the events of 19 and 20 February 1979. If medical advice is sought merely for the purpose of defense at trial, the assumption of inherent truthfulness of the information given to the doctor is absent. See Bock, supra: Ward v. Wentz, 20 N.C.App. 229, 201 S.E.2d 194 (1973). Thus the correct form of the question as to whether Dr. Ravaris was of the opinion that defendant panicked would have been a hypothetical question, rather than a direct one. See 1 Stansbury, supra, § 136; Bock, supra. As the opinion sought was based upon facts not in evidence, the court properly excluded this testimony.
It is apparent that defendant sought to introduce the expert testimony as evidence that he in fact did panic, to establish that he was confused and not thinking logically upon discovering the body. Diminished capacity is not a defense, nor did defendant attempt to establish a defense of insanity. Cf. Bock, supra (amnesia itself no defense to criminal charge); State v. Baldwin, 276 N.C. 690, 174 S.E.2d 526 (1970) ("pathological intoxication" not a defense to murder charge). Defendant's evidence that he panicked or became confused would not tend to negate any of the necessary elements of the crime, discussed earlier in this opinion. Additionally, defendant himself testified, in effect, that he had panicked; therefore, the substance of the proffered expert testimony was before the jury and defendant was not prejudiced by the denial of its admission.
Defendant further contends that the court erred in refusing to declare Charles Fearing a hostile witness during his redirect examination, which would have allowed defendant to ask leading questions to impeach Fearing's credibility. The settled rule in North Carolina is that a party may not impeach his own witness. State v. Pope, 287 N.C. 505, 215 S.E.2d 139 (1971); State v. Salame, 24 N.C.App. 1, 210 S.E.2d 77 (1974), cert. denied, 286 N.C. 419, 211 S.E.2d 800 (1975); 1 Stansbury, supra, § 40 (although the rule has been modified in civil cases by Rule 43(b), North Carolina Rules of Civil Procedure). The decision whether to declare a witness hostile or adverse rests within the trial court's sound discretion and will not be reversed absent a showing of abuse. State v. Hairston, 280 N.C. 220, 185 S.E.2d 633, cert. denied, 409 U.S. 888, 93 S.Ct. 194, 34 L.Ed.2d 145 (1972); State v. Clanton, 278 N.C. 502, 180 S.E.2d 5 (1971). The significance of excluded testimony must be made to appear in the record to be reviewable. Currence v. Hardin, 296 N.C. 95, 249 S.E.2d 387 (1978); Spinella v. Pearce, 12 N.C.App. 121, 182 S.E.2d 620 (1971). Here, we do not find that Charles Fearing's testimony, nor the answer given outside the presence of the jury, demonstrates an unwillingness to answer or an interest adverse to defendant's. Rather, it tended to negate his own guilty conduct involving the accident, which, if believed by the jury, would have exculpated defendant. Furthermore, defendant's witness Malcolm Fearing presented essentially the same evidence. We find no error or prejudice. These assignments of error are overruled.

IV.
The next category of defendant's assignments of error deals with exhibits.
Defendant objects to the state's use of a photograph of the accident victim, Cloice Creef. He contends no proper foundation was laid for the photograph's introduction, that it was not a fair and accurate representation, that it was not illustrative of the *855 witness's testimony, that it was irrelevant and prejudicial, and that testimony regarding the photograph related to matters not yet in evidence.
Photographs are admissible if they tend to show circumstances relating to the crime. State v. Westbrook, 279 N.C. 18, 181 S.E.2d 572 (1971), death penalty vacated, 408 U.S. 939, 92 S.Ct. 2873, 33 L.Ed.2d 761 (1972); State v. Cutshall, 278 N.C. 334, 180 S.E.2d 745 (1971). Although the pictures must portray a scene or person observed by the witness, they need not be an exact reproduction, nor must they have been made at the time the event occurred. See State v. Lentz, 270 N.C. 122, 153 S.E.2d 864, cert. denied, 389 U.S. 866, 88 S.Ct. 133, 19 L.Ed.2d 139 (1967). Here, the photograph was relevant in establishing the identity of the victim. The witness, Creef's son-in-law, after testifying as to his observations of Creef's actions on 19 February, was asked how Creef looked. The picture was used to illustrate his testimony. Minor discrepancies were pointed out. Any technical errors in the photograph's admission are harmless, as defendant had the opportunity to cross-examine the witness and it does not appear that he was prejudiced by its admission. See State v. Cross, 293 N.C. 296, 237 S.E.2d 734 (1977).
Defendant argues that the court erred in admitting the state's exhibits consisting of articles of Creef's clothing, particles of the automobile's windshield, ashes from Charles Fearing's fireplace, and fragments of wood and glass. He contends that there was no evidence that the Fearing automobile had not hit Creef and that this evidence only served to prejudice defendant by exciting the sympathy of the jury.
These exhibits tend to show a necessary element of the offense of accessory after the fact: that the principal crime was committed. See Squire, supra; Martin, supra. The fact that evidence may arouse the jury's emotions is not sufficient in itself for its exclusion. See Cutshall, supra; Atkinson, supra.
Defendant argues that the court should have granted his motion to have the jury view the automobile at night, rather than in the daylight, as defendant first observed the car at night. The state contends the daytime view was proper because the SBI agents who were testifying examined the vehicle during the day. We agree.
Tangible objects are admissible where they relate to the crime. See State v. Felton, 283 N.C. 368, 196 S.E.2d 239 (1973). The damaged automobile was direct evidence that the hit-and-run accident had occurred. Any change in the appearance of the automobile under these conditions was not substantial and defendant had the opportunity to point out any differences. See State v. Carnes, 279 N.C. 549, 184 S.E.2d 235 (1971); State v. McLeod, 17 N.C.App. 577, 194 S.E.2d 861 (1973). The accessory charge against defendant did not rest solely on his own conduct that night. We hold that the daytime jury view was within Judge Brown's discretion. See Huff v. Thornton, 287 N.C. 1, 213 S.E.2d 198 (1975); State v. Smith, 13 N.C.App. 583, 186 S.E.2d 600, cert. denied, 281 N.C. 157, 187 S.E.2d 586 (1972).
Defendant objects to the court's refusal to allow into evidence a pair of ski gloves found in his car, as relevant to showing that he was set up. Again we find admission of such evidence was within the judge's discretion and find no abuse. Although evidence that a crime was committed by a third party is not admissible unless it directly points to the guilt of that party, State v. Jenkins, 292 N.C. 179, 232 S.E.2d 648 (1977), defendant was allowed to put before the jury his theory that he was set up and to testify as to the gloves. He was not prejudiced by their exclusion as an exhibit.
Defendant contends that it was error for the court to deny his motion to suppress the accident report he submitted to the Dare County sheriff. A voir dire was held, at which both defendant and the state presented evidence and Judge Brown made findings of fact and conclusions of law. These findings are conclusive on appeal if supported by the evidence. State v. Miley, 291 N.C. 431, 230 S.E.2d 537 (1976); *856 State v. Blackmon, 280 N.C. 42, 185 S.E.2d 123 (1971). Defendant argues that the court's conclusion that his report was voluntarily made is not supported by the evidence.
Defendant concedes that he had a duty to make the report under N.C.G.S. 20-166.1(e), and that extrajudicial admissions by a defendant are admissible if they are voluntarily and knowingly made. State v. Muse, 280 N.C. 31, 185 S.E.2d 214 (1971), cert. denied, 406 U.S. 974, 92 S.Ct. 2409, 32 L.Ed.2d 674, rehearing denied, 409 U.S. 898, 93 S.Ct. 99, 34 L.Ed.2d 157 (1972). We cannot accept defendant's argument that his performance of an official duty in the course of his job amounted to official coercion and supported his motion to suppress. The record reveals no evidence that defendant resisted or objected to making his report. He had several days to write the report at the time and place he desired. He showed the document to his attorney before submitting it. There was no connection between defendant's being told to write the report and his later conversations with SBI agents. We find that the state carried its burden of proving that the report was admissible. See State v. Williams, 276 N.C. 703, 174 S.E.2d 503 (1970), rev'd as to death penalty, 403 U.S. 948, 91 S.Ct. 2290, 29 L.Ed.2d 860 (1971). Looking to the entire record, we find no error in the trial court's conclusion that the statement was voluntarily made. See State v. Silver, 286 N.C. 709, 213 S.E.2d 247 (1975). We reject these assignments of error.

V.
Defendant excepts to the following portion of the court's charge to the jury:
So I charge that if you find from the evidence and beyond a reasonable doubt that on or about February 19, 1979, the crime of failure to immediately stop a 1972 Mercedes motor vehicle at the scene of an accident involving injury or death to Cloice H. Creef, was committed by Charles S. Fearing, that is to say that on or about February 19, 1979, Charles S. Fearing while driving a 1972 Mercedes, was involved in an accident in which Cloice H. Creef was physically injured or killed, and that Charles S. Fearing knew of the accident and wilfully failed to immediately stop at the scene, and that thereafter on or about February 20, 1979, the defendant, Claudie Clara Duvall, knowing Charles S. Fearing to have committed the felony of failure to immediately stop the 1972 Mercedes motor vehicle at the scene of an accident involving injury or death to Cloice H. Creef, assisted Charles S. Fearing to avoid apprehension, arrest, or punishment, by failing to report or investigate the accident or by failing to preserve evidence, or by directing that dirt be knocked off a post so it would look like it had hit the car, it would be your duty to return a verdict of guilty of an accessory after the fact of failure to immediately stop the 1972 Mercedes motor vehicle at the scene of an accident involving injury or death to Cloice H. Creef.
However, if you do not so find, or have a reasonable doubt as to one or more of these things, it would be your duty to return a verdict of not guilty.
Defendant argues the court erred in stating that if the jury should find that defendant directed that dirt be knocked off a post so that it would look like it had been hit by the car, the jury should find defendant guilty. He alleges that there is absolutely no evidence to support this instruction.
The evidence necessary for inclusion in a charge need not be direct statements of the witnesses. The necessary elements of a crime may be made out from clear inferences supplied by all the evidence presented. See State v. Culter, 271 N.C. 379, 156 S.E.2d 679 (1967). Malcolm Fearing testified that defendant suggested that he knock the dirt from the post. Charles Fearing stated that defendant directed him to sweep up the debris. Other portions of their testimony also support the inference that defendant suggested this action so as to make it appear that the post was the object which Charles Fearing struck. Defendant's official accident report also supports this inference. We find no error in the instruction.
*857 Although defendant did not raise objections to other portions of the charge in his brief or in oral argument, we feel it necessary to comment on the portion concerning Charles Fearing's knowledge of the accident, as this Court has recently awarded a new trial for Malcolm Fearing on the basis of similar instructions. State v. [Malcolm] Fearing (filed 3 February 1981) (Hedrick, J., dissenting on grounds that this Court declared an assignment of error based on identical instructions to be without merit in State v. [Charles] Fearing, supra). The Malcolm Fearing case was overturned on the basis that the instruction implied that the driver's willful failure to stop upon knowledge that an accident had occurred, whether or not he knew that a person had been injured or killed, would support finding a violation of N.C.G.S. 20-166. Judge Wells, speaking for the Court, held that to establish the necessary guilty knowledge, the state must show that the driver knew that a person had been injured or killed in the accident. We hold in the case sub judice that the instruction, read in context, complied with this standard. The phrase "if Charles S. Fearing knew of the accident" (emphasis added) clearly relates to the preceding clause and other portions of the charge describing the accident as that "in which Cloice H. Creef was physically injured or killed."
We find no error in the court's charge to the jury.

VI.
Defendant assigns error to the court's denial of his motions to dismiss, to set aside the verdict as being contrary to the greater weight of the evidence, for judgment notwithstanding the verdict, for new trial, and for appropriate relief. Defendant contends that the state failed to carry its burden of proof and that the evidence is insufficient to support the verdict. We disagree.
The standards for granting these motions are well familiar and will not be reiterated here. A careful review of the record convinces us that the state presented evidence by which a reasonable jury could find beyond a reasonable doubt all the necessary elements of the crime of which defendant was charged, as set out at the beginning of this opinion.
Finally, defendant contends that he should have been placed on probation. Defendant recognizes that probation is not an absolute right, but is a matter of legislative grace. State v. Hewett, 270 N.C. 348, 154 S.E.2d 476 (1967). It rests within the sound discretion of the trial court. See State v. Pope, 257 N.C. 326, 126 S.E.2d 126 (1962); State v. Stallings, 234 N.C. 265, 66 S.E.2d 822 (1951). Defendant argues that Judge Brown failed to exercise his discretion and dismissed the motion summarily, citing the following dialogue: "MR. BLOUNT: Would you consider suspending it, Your Honor? COURT: No, sir." However, defendant ignores the fact that a full presentencing hearing was held, during which defendant was allowed to present and discuss his views, while the state made no recommendation regarding sentencing. The sentence imposed was well within the statutory limit set by N.C.G.S. 14-7 and we will not disturb it on appeal. See State v. Legette, 292 N.C. 44, 231 S.E.2d 896 (1977); State v. Slade, 291 N.C. 275, 229 S.E.2d 921 (1976).
We conclude that defendant received a fair trial, free from prejudicial error.
No error.
WEBB and WHICHARD, JJ., concur.