IN THE SUPREME COURT OF NORTH CAROLINA

No. 162A17

Filed 17 August 2018

BOONE FORD, INC. d/b/a BOONE FORD LINCOLN MERCURY, INC., a Delaware Corporation

v.

IME SCHEDULER, INC., a New York Corporation

and

CASH FOR CRASH, LLC, a New Jersey Limited Liability Company

v.

BOONE FORD, INC. d/b/a BOONE FORD LINCOLN MERCURY, INC., a Delaware Corporation

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, ___ N.C. App. ___, 800 S.E.2d 94 (2017), vacating an order granting a motion to consolidate entered on 21 April 2015 by Judge Jeff Hunt in Superior Court, Watauga County. Heard in the Supreme Court on 13 March 2018.

> *Reeves DiVenere Wright, by Anné C. Wright, for appellant Boone Ford, Inc.*
>
> *Miller & Johnson, PLLC, by Nathan A. Miller, for defendant-appellee IME Scheduler, Inc. and plaintiff-appellee Cash for Crash, LLC.*

MARTIN, Chief Justice.

This appeal concerns two cases that were consolidated before trial by one superior court judge and then tried by another superior court judge. We hold that the first judge erred in consolidating these cases because he was not scheduled to preside over the consolidated trial, but that the judge who presided at trial effectively

corrected that error, leaving the trial and judgment untainted. We therefore reverse the decision of the Court of Appeals and remand this case to the Court of Appeals for additional proceedings.

In February 2014, appellant Boone Ford, Inc. filed a complaint against appellee IME Scheduler, Inc. In its complaint, Boone Ford set forth five claims for relief relating to IME Scheduler's contemplated purchase of a Ford Raptor truck from Boone Ford. That purchase never occurred. In its answer, IME Scheduler asserted five counterclaims against Boone Ford arising out of the same failed transaction. That September, co-appellee Cash for Crash, LLC filed its own complaint against Boone Ford, alleging conversion and other torts based on an accidental wire transfer of $206,569 that, according to Cash for Crash's complaint, Boone Ford refused to return for three months. It is undisputed that IME Scheduler and Cash for Crash were both owned by the same man, Mikhail Heifitz, when the events at issue in both lawsuits took place. In its answer to Cash for Crash's complaint, Boone Ford moved to consolidate the two cases.

The superior court held a hearing on Boone Ford's motion to consolidate in April 2015, with Judge Jeff Hunt presiding. During the hearing, Judge Hunt said that he did not know who would preside at trial. There is no evidence in the record that Judge Hunt expected to be, or was scheduled to be, the presiding judge at trial. Judge Hunt granted the motion the day after the hearing.

Judge William H. Coward was ultimately assigned to preside at trial. In January 2016, he approved a pretrial order setting out various stipulations of the parties. He presided over the consolidated trial in February 2016. The record contains no indication that any party moved to sever the consolidated cases or asked Judge Coward to reconsider whether the cases should have been consolidated. The jury returned a verdict in Boone Ford's favor, and Judge Coward issued a judgment that awarded Boone Ford $70,000 in damages plus interest and costs.

IME Scheduler and Cash for Crash appealed that judgment to the Court of Appeals, arguing, among other things, that the cases had been improperly consolidated. In a split decision, the Court of Appeals agreed with that argument, vacated Judge Hunt's consolidation order, and remanded the newly unconsolidated cases to superior court. *Boone Ford, Inc. v. IME Scheduler, Inc.*, ___ N.C. App. ___, ___, 800 S.E.2d 94, 98 (2017). Relying on our decision in *Oxendine v. Catawba County Department of Social Services*, the Court of Appeals reasoned that, because there was no indication that Judge Hunt would preside over these cases at trial, he lacked the authority to consolidate them. *Id.* at ___, 800 S.E.2d at 96-97 (citing and quoting *Oxendine*, 303 N.C. 699, 703-04, 281 S.E.2d 370, 373 (1981)). Based on this rationale, the Court of Appeals vacated the consolidation order. *Id.* at ___, 800 S.E.2d at 97-98. Judge Dillon dissented. *See generally id.* at ___, 800 S.E.2d at 98-99 (Dillon, J., dissenting). He agreed with the majority that Judge Hunt's order consolidating the cases was not binding on Judge Coward. *Id.* at ___, 800 S.E.2d at 98. But he noted

that IME Scheduler and Cash for Crash "*never* made any motion asking Judge Coward to sever the matter." *Id.* at ___, 800 S.E.2d at 99. In Judge Dillon's view, this omission should have precluded IME Scheduler and Cash for Crash from objecting to the consolidation later simply because the jury returned a verdict unfavorable to them. *Id.* at ___, 800 S.E.2d at 98-99. Boone Ford appealed to this Court based on Judge Dillon's dissenting opinion.

In *Oxendine*, Judge Forrest A. Ferrell—the judge who was presiding over pretrial matters in the superior court action in that case—granted a motion to consolidate two actions even though "[t]here was no indication that he was scheduled to preside" at the trial of the consolidated cases. 303 N.C. at 704, 281 S.E.2d at 373. Adopting a rule first articulated by the Court of Appeals in *Pickard v. Burlington Belt Corp.*, this Court stated that "a consolidation cannot be imposed upon the judge presiding at the trial by the preliminary Order of another trial judge." *Id.* at 703, 281 S.E.2d at 373 (quoting *Pickard v. Burlington Belt Corp.*, 2 N.C. App. 97, 103, 162 S.E.2d 601, 604-05 (1968)). Applying this procedural rule from *Pickard*, this Court held that Judge Ferrell's entry of a consolidation order was "procedurally in error" and vacated that order. *Id.* at 703-04, 281 S.E.2d at 373. Thus, under *Oxendine*, a judge who is not scheduled to preside at the consolidated trial cannot consolidate two or more cases for trial. *Id.* "Whether cases should be consolidated for trial is to be determined in the exercise of his sound discretion *by the judge who will preside during*

*the trial . . . .*" *Id.* at 703, 281 S.E.2d at 373 (emphasis added) (quoting *Pickard*, 2 N.C. App. at 103, 162 S.E.2d at 604-05).

Here, Judge Hunt stood in the same position that Judge Ferrell did in *Oxendine*. There was no indication in this case, either at the consolidation hearing or at any other time, that Judge Hunt was scheduled to preside over the consolidated trial. As we have already said, Judge Hunt noted at the consolidation hearing that he did not know who would preside at trial. Like Judge Ferrell in *Oxendine*, then, Judge Hunt made a procedural error in issuing the consolidation order in question.

This does not end our analysis, however, because Judge Coward had the authority to make his own determination on consolidation. Under *Oxendine*, Judge Hunt's consolidation order could not bind Judge Coward. *Id.* at 704, 281 S.E.2d at 373. And although the record does not indicate that any party raised the question of consolidation before Judge Coward at any time, that does not change our analysis. Requiring Judge Coward to wait for a party to raise the issue of consolidation before acting on it, after all, would prevent him from severing the cases unless a party moved to sever. This requirement *would* allow Judge Hunt's order to bind Judge Coward in this instance, because no party moved before Judge Coward to sever the cases. That, in turn, would impose a restriction on the *Oxendine* rule that does not exist. Judge Coward therefore must have been free to sever the cases sua sponte for any reason he deemed appropriate.

Because we presume that judges know the law, *see Sanders v. Ellington*, 77 N.C. 255, 256 (1877); *accord Lambrix v. Singletary*, 520 U.S. 518, 532 n.4, 117 S. Ct. 1517, 1527 n.4 (1997), we presume that Judge Coward knew that he had the authority under *Oxendine* to sever the cases sua sponte. But he still signed a pretrial order that left the cases consolidated and ultimately presided over a consolidated trial. So Judge Coward implicitly made his own determination—a determination that the cases should be consolidated for trial. When he did so, his determination on consolidation replaced Judge Hunt's determination as the operative one in these proceedings. By substituting a procedurally sound determination in place of a procedurally unsound one, Judge Coward corrected the procedural error that Judge Hunt's consolidation order had injected into this case.

It is worth emphasizing the dramatically different postures in which this case and *Oxendine* came before our Court. The plaintiffs in *Oxendine* filed an interlocutory appeal less than a week after the entry of the consolidation order. *See* 303 N.C. at 701-02, 281 S.E.2d at 372. In other words, when *Oxendine* reached our appellate courts, no trial had occurred, and no judge had been assigned to preside at trial. As a result, no judge presiding at trial had the chance to correct the error that Judge Ferrell had made. Only the appellate courts could correct it, and this Court did so. *See id.* at 704, 281 S.E.2d at 373. In this case, by contrast, Judge Coward was assigned to preside at, and did in fact preside at, the consolidated trial. He had already corrected the procedural error in question by the time the trial here took

place, which left no error for the appellate courts to address. Because the appeal in this case was filed much later in this case's proceedings than the appeal in *Oxendine* was filed in that case's proceedings, and because in this case the second judge corrected the error that arose on the first judge's watch, this case is both factually and legally distinguishable from *Oxendine*.

The *Oxendine* rule—that is, the rule that "the discretionary ruling of one superior court judge to consolidate claims for trial may not be forced upon another superior court judge who is to preside at that trial," *id.* at 704, 281 S.E.2d at 373— was undoubtedly designed with the constitutionally mandated rotation of superior court judges in mind. *See* N.C. Const. art. IV, § 11 ("The principle of rotating Superior Court Judges among the various districts of a division is a salutary one and shall be observed."). *Oxendine*'s rule helps keep judges who will be rotating away from a district from unduly interfering with trials that will almost certainly be held in front of other judges. Because of what we hold today, a litigant who thinks that consolidation was improper under *Oxendine* may not wait until a consolidated trial is over and then object to consolidation just because the litigant does not like the outcome of the consolidated trial. Under today's decision, though, the authority to consolidate cases for trial remains in the hands of the judge who will preside at trial. That is *Oxendine*'s rule; it is sound; and we reaffirm it.

The *holding* of *Oxendine*, however, is on somewhat shakier ground. *Oxendine* could have held that Judge Ferrell's consolidation order could not bind any later-in-

time judge but that the order was still valid until a later-in-time judge made a different determination. Instead, *Oxendine* held that it was improper for Judge Ferrell even to issue the consolidation order in the first place. *See* 303 N.C. at 703-04, 281 S.E.2d at 373. This holding does not necessarily follow from *Oxendine*'s rule, and its application may be impractical in some cases.[1]

In fact, *Oxendine*'s holding—that the judge who is assigned to hear preliminary matters but not scheduled to preside at trial cannot even *issue* an order consolidating related cases—cannot be easily harmonized with modern-day best practices for litigation. Because of the rotation process used to assign superior court judges, the judge hearing preliminary motions is often not the judge scheduled to preside at trial. Under *Oxendine*, it is therefore difficult to consolidate cases early in the litigation process absent a stipulation by the parties, even if consolidation is clearly justified on the merits. And waiting to consolidate until the eve of trial results in additional last-minute work for both judges and lawyers. Lawyers usually prefer to prepare cases as they will be tried, and Boone Ford correctly suggests in its brief that even work as prosaic as the preparation of trial notebooks and exhibits might be disrupted if cases

---

[1] Notably, the *Superior Court Judges' Benchbook* cites *Oxendine* for the proposition that "[i]t is within the discretion of the judge presiding at trial whether to consolidate for trial actions that involve common questions of law and fact," but does not explicitly state that a judge not scheduled to preside at trial may not issue a consolidation order. Michael Crowell, *North Carolina Superior Court Judges' Benchbook*, *General: One Trial Judge Overruling Another* 5 (School of Gov't, Univ. of N.C. at Chapel Hill, Jan. 2015), https://benchbook.sog.unc.edu/judicial-administration-and-general-matters/one-trial-judge-overruling-another. The *Benchbook* thus summarizes *Oxendine*'s rule but not its holding.

are consolidated right before trial. In the meantime, lawyers and litigants may also waste time and effort on duplicative discovery matters. With all of that in mind, Judge Hunt's early consolidation order, although procedurally improper, made good practical sense.

The concurring opinion tries to resolve this tension by arguing that Judge Hunt did not commit error in this case at all. But *Oxendine*'s holding simply cannot be squared with a conclusion that no error occurred here. Both here and in *Oxendine*, a judge not scheduled to preside at trial consolidated two cases for trial, and *Oxendine* declared that the consolidation in that case was "procedurally in error," 303 N.C. at 703, 281 S.E.2d at 373, precisely because "[t]here was no indication that [the judge in question] was scheduled to preside at . . . trial," *id.* at 704, 281 S.E.2d at 373. The concurrence says nothing to distinguish the consolidation order in this case from the one in *Oxendine*, presumably because the two orders are not distinguishable. The meaningful difference between the two cases arose only when Judge Coward was assigned to preside at trial. At that point in time, Judge Coward could and did correct an error that had been made. But it is logically impossible that he retroactively caused no error to have been made at all. We have only two options: either declare Judge Hunt's order "procedurally in error" or overrule *Oxendine* outright. We cannot leave *Oxendine* in place while also declaring that no error occurred here.

And *Oxendine* has been good law for nearly four decades. We should not casually disturb our longstanding precedent, and we do not need to disturb it today

to decide this case. It is enough to say that the judge who presides at a consolidated trial can effectively correct the procedural error that an earlier judge makes under *Oxendine*. We hold that Judge Coward's implicit determination that the cases in question should be consolidated for trial replaced Judge Hunt's determination on consolidation and corrected the procedural error that Judge Hunt had made. We therefore reverse the decision of the Court of Appeals and remand this case to the Court of Appeals to consider other issues that its decision did not reach.

REVERSED AND REMANDED.

Justice NEWBY concurring in the result only.

Parties need to know the structure of the trial as early as possible to plan for the presentation of witnesses and evidence, to organize exhibits, and to conduct trial preparation generally. Rule 42 of the North Carolina Rules of Civil Procedure contemplates a pretrial procedure to consolidate matters for trial. This case illuminates the tension arising under our Rules of Civil Procedure as we adapt them to a system of rotating superior court judges. It appears this early notification of consolidation happened here. I agree with the majority that Judge Hunt's consolidation order had no binding effect on Judge Coward because Judge Hunt was not scheduled to preside over the trial. Any party objecting to the consolidation could have presented the matter afresh to the judge presiding at trial. Judge Coward, having the authority to make the final decision on consolidation, could have divided the cases for trial, but he did not. By ultimately trying the cases together, the presiding judge implicitly ratified the consolidation decision, leaving the trial and judgment untainted. Thus, Judge Hunt's initial decision to consolidate was a proper pretrial order, acquiesced to by the parties and ultimately ratified by the presiding judge at trial. Accordingly, I do not believe Judge Hunt committed "error." My concern is that, by labeling a preliminary pretrial consolidation order "error," the majority opinion will squelch the entry of these useful orders contemplated by Rule 42. Therefore, I concur in the result only.

Rule 42(a) of the North Carolina Rules of Civil Procedure governs the

consolidation of claims in state court and authorizes the trial court to consolidate pending actions involving a common question of law or fact:

> [T]he judge may order a joint hearing or trial of any or all the matters in issue in the actions; he may order all the actions consolidated; and he may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

N.C.G.S. § 1A-1, Rule 42(a) (2017). In allocating this authority, the plain text of Rule 42 makes no distinction as to the judge who presides over the pretrial matters or trial. *Id.* (stating that "[w]hen actions involving a common question of law or fact are pending in both the superior and the district court of the same county, *a* judge of the superior court in which the action is pending may order all the actions consolidated" (emphasis added)). Rule 42 does not expressly prohibit the judge presiding over pretrial matters from entering a preliminary order of consolidation.[1]

We have often said that "one superior court judge ordinarily may not overrule a prior judgment of another superior court judge in the same case on the same issue." *State v. Duvall*, 304 N.C. 557, 561, 284 S.E.2d 495, 498 (1981) (quoting *State v. Duvall*, 50 N.C. App. 684, 691, 275 S.E.2d 842, 850 (1981), *rev'd on other grounds*, *Duvall*, 304 N.C. 557, 284 S.E.2d 495). "This rule does not apply, however, to *interlocutory* orders given during the progress of an action which affect the procedure and conduct of the trial." *State v. Stokes*, 308 N.C. 634, 642, 304 S.E.2d 184, 189

---

[1] Clearly, the judge presiding over pretrial matters can consolidate those matters for discovery and other pretrial purposes as needed.

(1983) (citations omitted). "An interlocutory order or judgment does not determine the issues in the cause but directs further proceedings preliminary to the final decree." *Id.* at 642, 304 S.E.2d at 190 (citations omitted). "Such order or judgment is subject to change during the pendency of the action to meet the exigencies of the case." *Id.* at 642, 304 S.E.2d at 190 (citations omitted).

This case illustrates the challenge arising under our Rules of Civil Procedure as we apply them to a system of rotating superior court judges. *See* N.C. Const. art. IV, § 11 ("The principle of rotating Superior Court Judges among the various districts of a division is a salutary one and shall be observed."). Relevant here, we have held that a pretrial ruling made by a superior court judge who is not scheduled to preside over the trial that consolidates claims for trial does not bind the superior court judge who actually tries the case. "[T]he discretionary ruling of one superior court judge to consolidate claims for trial may not be forced upon another superior court judge who is to preside at that trial." *Oxendine v. Catawba Cty. Dep't of Soc. Servs.*, 303 N.C. 699, 704, 281 S.E.2d 370, 373 (1981); *see also Stokes*, 308 N.C. at 642, 304 S.E.2d at 189-90. In my view, the rule in *Oxendine*, read in this manner, squares with our current Rules of Civil Procedure and does not preclude the judge who considers pretrial matters from making a non-binding, preliminary order.[2]

---

[2] While this Court decided *Oxendine* after our adoption of the Rules of Civil Procedure, it relied on a pre-Rules case. *See Oxendine*, 303 N.C. at 703, 281 S.E.2d at 373 (citing *Pickard v. Burlington Belt Corp.*, 2 N.C. App. 97, 103, 162 S.E.2d 601, 604-05 (1965)). Furthermore,

Here, since Judge Hunt was not scheduled to preside over the consolidated trial, his procedural consolidation order had no binding effect on Judge Coward. As the majority notes, trial court judges are presumed to know the law. *Sanders v. Ellington*, 77 N.C. 255, 256 (1877); *accord Lambrix v. Singletary*, 520 U.S. 518, 532 n.4, 117 S. Ct. 1517, 1527 n.4, 137 L. E. 2d 771, 789 n.4 (1997). We presume that Judge Coward knew he had the authority to sever the cases *ex mero motu*. *See Stokes*, 308 N.C. at 642, 304 S.E.2d at 189-90; *see also* N.C.G.S. § 1A-1, Rule 42(b)(1) (2017) ("The court may in furtherance of convenience or to avoid prejudice . . . order a separate trial of any claim . . . ."). No party contested the consolidation in the pretrial order. Judge Coward signed a pretrial order that left the cases consolidated and presided over a consolidated trial, thus implicitly ratifying Judge Hunt's preliminary order with his own determination on consolidation.

The rule in *Oxendine*, that the authority to consolidate cases for trial ultimately remains in the hands of the judge who will preside at the trial, does not preclude a trial judge from making a non-binding, preliminary determination that consolidation is warranted in the pretrial stages. This interpretation harmonizes the rule in *Oxendine* with our North Carolina Rules of Civil Procedure, which expressly

---

the trial judge in *Oxendine* issued his order "out of term and out of session." *Oxendine*, 303 N.C. at 704, 281 S.E.2d at 373. Orders that are issued out of term and out of session are improper unless both parties consent. *See State v. Saults*, 299 N.C. 319, 325, 261 S.E.2d 839, 842 (1980) (citing *Baker v. Varser*, 239 N.C. 180, 79 S.E.2d 757 (1954)). The opinion in *Oxendine* does not specify the impact of this error. Nonetheless, as indicated herein, I believe its essential holding, that the judge presiding at trial makes the ultimate determination regarding consolidation, can be harmonized with what occurred here without finding error.

contemplate these pretrial matters and allocate the authority to the presiding judge to consolidate without reservation. Nonetheless, parties need as much notice as possible if matters are to be consolidated for trial. Thus, a preliminary ruling on consolidation in the pretrial stages benefits the trial process and thereby serves the ends of justice. Accordingly, I believe no error was committed by the process used here.