HAYDEN P. OXENDINE AND WIFE, DOROTHY W. OXENDINE v. CATAWBA COUNTY DEPARTMENT OF SOCIAL SERVICES

No. 71

(Filed 31 August 1981)

1. Courts § 9; Rules of Civil Procedure § 42— consolidation—order of superior court judge improper

The discretionary ruling of one superior court judge to consolidate claims for trial may not be forced upon another superior court judge who is to preside at that trial; therefore, the trial court erred in granting defendant's motion to consolidate plaintiffs' custody action and petition for adoption for trial in the superior court where the judge had a hearing on defendant's motion and entered his order of consolidation out of term and out of session, but there was no indication that he was scheduled to preside at the session of court during which he set the consolidated cases to be presented for trial. G.S. 1A-1, Rule 42(a).

2. Infants § 6; Divorce and Alimony § 25— who may bring custody action

The Court of Appeals erred in determining that G.S. 50-13.1, which names the parties who may institute a custody proceeding, applied only to those custody disputes arising from a divorce or separation.

3. Infants § 6; Parent and Child § 1— child custody—controlling statute

In plaintiffs' action to obtain custody of a child placed in their home pursuant to a foster parent agreement, the Court of Appeals erred in relying on G.S. 7A-289.33 as the controlling statute, since that statute sets forth the effects of a court order terminating the parental rights of a natural parent on the grounds of abuse or neglect of a minor child, but such a court order was not involved in this case, as the natural parents of the minor child in issue voluntarily released their parental rights and surrendered the child to defendant for adoptive placement; therefore, this action was governed by the provisions of G.S. 48-9.1.

4. Infants § 6; Parent and Child § 1— parental rights voluntarily surrendered— action by foster parents for custody

According to G.S. 48-9.1, the county department of social services or the child placing agency to which a child has been surrendered by his parents retains legal custody of the child until the occurrence of one of the events specified in the statute, and legal custody never passes to any foster parent charged with the duty of caring for and supervising the child; therefore, plaintiffs were without standing to bring an action seeking custody of the minor child placed in their home for foster care by defendant.

5. Adoption § 2— foster parents—standing to file adoption petition

Since the welfare of the child is the controlling factor in an adoption proceeding, any agreement between plaintiffs and defendant concerning the adoption of a child who was placed in plaintiffs' home for foster care is subject to the court's independent judgment as to what is in the best interest of the

child; consequently, defendant could not by contract seek to deprive plaintiffs, as foster parents, of standing to challenge the reasonableness of defendant's denial of plaintiffs' request to adopt the minor child placed in their home.

**6. Adoption § 1— adoption action transferred from clerk to superior court**

The clerk of superior court did not err in transferring plaintiffs' adoption action to the superior court where a number of factual issues arose in determining whether defendant unreasonably withheld its consent to allow plaintiffs to institute an adoption proceeding. G.S. 48-12(a); G.S. 1-273.

ON plaintiffs' petition for discretionary review of a decision of the Court of Appeals, 49 N.C. App. 570, 272 S.E. 2d 417 (1980) (opinion by *Morris, C.J.*, with *Hedrick, J.* and *Whichard, J.* concurring), vacating the order entered by *Ferrell, J.*, on 12 November 1979 in Superior Court, CATAWBA County.

This case involves the custody and adoption of a minor child, Jeffrey Thomas Brown, who was placed in the custody of and surrendered for adoptive placement to defendant, the Department of Social Services, by his biological mother on 19 April 1978. On 20 October 1978 the child's biological father executed a consent for the child to be placed for adoption by defendant.

On 2 June 1978, when the child was approximately five weeks old, he was placed in plaintiffs' home pursuant to a foster parent agreement. Plaintiffs were to provide care and supervision for the child as licensed foster parents under the Foster Home Program. The child developed, and still suffers from, severe respiratory problems which necessitate special care, attention, and supervision of the child by plaintiffs. Due to the danger of death to the child from wheezing, coughing, and other respiratory symptoms, the child slept in the same room with plaintiffs from the time he was placed in their care. Plaintiffs at all times sought appropriate medical care for the child and followed the instructions given by doctors explicitly.

One provision of the foster parent agreement entered into between plaintiffs and defendant requires that plaintiffs, as foster parents, initiate no proceedings for the adoption or custody of a child placed with them without the prior written consent of the supervising agency. In accordance with this provision, plaintiffs in April of 1979 requested defendant's consent to adopt the child at issue in this case. Defendant denied their request, stating that plaintiffs were ineligible to adopt the child because (1) at ages

forty-four and forty-three they were not in the normal child bearing years for a child of this age, and (2) their residency in Catawba County greatly increased the likelihood that the child's natural parents would learn of his identity and whereabouts. On 7 May 1979 defendant informed plaintiffs that adoptive placement of the child in another home was imminent and that they could expect removal of the child in the near future.

On 25 May 1979, plaintiffs filed a complaint pursuant to G.S. 50-13.4 and G.S. 50-13.5(b)(1) in Catawba County District Court seeking permanent custody of the child. On the same day, Judge Tate entered an interlocutory order awarding temporary custody to plaintiffs pending the final outcome of their custody action.

Plaintiffs filed a petition for the adoption of Jeffrey Thomas Brown with the Clerk of Superior Court of Catawba County on 12 June 1979. Defendant answered, contending that since plaintiffs did not obtain defendant's permission to seek adoption of the child, as required by the foster parents agreement, then they had no standing to institute an adoption proceeding and the adoption petition should be dismissed for failure to state a claim for relief. Defendant also claimed that the adoption of the child by plaintiffs would not be in the best interests of the child, enumerating several justifications for this conclusion.

On 11 October 1979, the Clerk of Superior Court, in accordance with G.S. 1-273, ordered the adoption proceeding transferred to the civil issue docket of Catawba County Superior Court, in that both factual and legal matters were at issue in this case.

Thereafter defendant moved, pursuant to rule 42(a) of the North Carolina Rules of Civil Procedure, to consolidate plaintiffs' custody action in district court with plaintiffs' petition for adoption in superior court for a joint trial in the superior court. Plaintiffs filed notice of limited appearance challenging the superior court's jurisdiction to hold a hearing on the consolidation matter. Plaintiffs argued that the district court had exclusive jurisdiction over child custody matters under G.S. 50-13.5(h) and, further, that G.S. 48-12 gives the Clerk of Superior Court exclusive original jurisdiction over adoption proceedings, with no jurisdiction in the superior court except on appeal from the Clerk's determination.

Despite plaintiffs' contentions, Judge Ferrell entered an order on 12 November 1979 dismissing plaintiffs' motion to vacate

Oxendine v. Dept. of Social Services

the Clerk of Superior Court's order transferring the adoption proceeding to superior court and granted defendant's motion to consolidate the custody action and the adoption proceeding for trial in superior court.

On 16 November 1979, plaintiffs filed a notice of appeal from Judge Ferrell's order. Defendant filed a motion on 26 November 1979 requesting that the superior court declare plaintiffs' notice of appeal and appeal entries null and void, and asking that the court schedule the consolidated actions for trial. The hearing date for defendant's motion was set for 3 December 1979. Plaintiffs objected to this hearing on the grounds that the superior court had no jurisdiction to hear either action and that the matter was already on appeal to the Court of Appeals on the jurisdictional issues.

On 10 December 1979, Judge Ferrell entered an order concluding that his judgment of 12 November 1979 was a nonappealable interlocutory order, and therefore holding that the notice of appeal and appeal entries which he had previously signed were a nullity. The trial of the consolidated actions was set for 4 February 1980. The Court of Appeals allowed plaintiffs' petition for a writ of certiorari on 23 January 1980.

The Court of Appeals vacated the superior court's order of 12 November 1979 granting defendant's motion to consolidate the custody action and adoption proceeding for trial in superior court, and remanded the custody action to district court with instructions to dismiss due to plaintiffs' lack of standing to seek custody of the child. It was further held that the Clerk of Superior Court properly transferred the adoption proceeding to the superior court for trial, and the adoption action was remanded to the superior court for a determination of any issues of fact and law presented.

We granted plaintiffs' petition for a temporary stay of enforcement of the Court of Appeals' decision on 22 December 1980. Plaintiffs' petition for discretionary review pursuant to G.S. 7A-31 was allowed 6 January 1981.

*Rudisill & Brackett by J. Richardson Rudisill, Jr., for plaintiff-appellants.*

*Thomas W. Warlick; Sigmon and Sigmon by W. Gene Sigmon for defendant-appellee.*

COPELAND, Justice.

Plaintiffs raise several issues on appeal which have substantial impact on the procedure to be followed in seeking to adopt a child voluntarily surrendered to a county department of social services pursuant to G.S. 48-9(a)(1). For the reasons stated below, we affirm the conclusions reached by the Court of Appeals.

[1] We first address the question of whether Judge Ferrell erred in granting defendant's motion to consolidate plaintiffs' custody action and petition for adoption for trial in the superior court.

G.S. 1A-1, Rule 42(a) provides that when actions involving a common question of law or fact are pending in both the superior and district courts of the same county, a judge of the superior court in which the action is pending may order the consolidation of the actions. Although the custody action and petition for adoption in the case *sub judice* do involve related issues of fact and law, and therefore could be properly consolidated under Rule 42(a), we find Judge Ferrell's actions in entering the order of consolidation procedurally in error.

We approve the Court of Appeals' holding in *Pickard v. Burlington Belt Corporation*, 2 N.C. App. 97, 103, 162 S.E. 2d 601, 604-05 (1965), where Judge Brock (later Justice Brock) reasoned for the Court as follows:

> "Whether cases should be consolidated for trial is to be determined in the exercise of his sound discretion by the judge who will preside during the trial; a consolidation cannot be imposed upon the judge presiding at the trial by the preliminary Order of another trial judge."

Although the *Pickard* decision was rendered prior to the effective date of the current North Carolina Rules of Civil Procedure, we believe the enactment of Rule 42(a)(1) does not affect this decision. *See Maness v. Bullins*, 27 N.C. App. 214, 218 S.E. 2d 507 (1975). The general principle that one superior court judge may not

restrain another from proceeding in a cause over which he has jurisdiction survives the enactment of the Rules of Civil Procedure. In accordance with this general rule, we find that the discretionary ruling of one superior court judge to consolidate claims for trial may not be forced upon another superior court judge who is to preside at that trial.

In the case before us, Judge Ferrell held a hearing on defendant's motion and entered his order of consolidation out of term and out of session. There was no indication that he was scheduled to preside at the session of court during which he set the consolidated cases to be presented for trial. Under these circumstances, we agree with the Court of Appeals that Judge Ferrell's order of consolidation must be vacated.

We must next determine whether the Court of Appeals erred in holding that plaintiffs had no standing to bring their custody action. Plaintiffs argue that they are authorized to seek custody of the child under the following language of G.S. 50-13.1:

"Any parent, relative, or other person, agency, organization or institution claiming the right to custody of a minor child may institute an action or proceeding for the custody of such child, as hereinafter provided."

Since they are "other person[s] . . . claiming the right to custody of a minor child . . .", plaintiffs contend that they have standing to bring the custody action at issue.

The Court of Appeals disagreed with plaintiffs, reasoning that when G.S. 50-13.1 is considered in light of G.S. 7A-289.33, it becomes apparent that G.S. 50-13.1 does not apply to grant standing to foster parents to bring an action seeking custody of a child placed in their care. G.S. 7A-289.33 sets forth the effects of a court order terminating parental rights due to the parent's abuse or neglect of his or her child, and provides in pertinent part:

"If the child had been placed in the custody of or released for adoption by one parent to, a county department of social services or licensed child-placing agency and is in the custody of such agency at the time of such filing of the petition, that agency shall, upon entry of the order terminating parental rights, acquire all of the rights for placement of said child as such agency would have acquired had the parent whose

rights are terminated released the child to that agency pursuant to the provisions of G.S. 48-9(a)(1), including the right to consent to the adoption of such child."

The Court of Appeals, relying on its earlier interpretation of a similar statute in *Browne v. Department of Social Services*, 22 N.C. App. 476, 206 S.E. 2d 792 (1974), held that G.S. 7A-289.33 applied in this case to place legal custody of the child in defendant, which custody could not be contested by plaintiffs as the foster parents of the child. The Court focused on the language of G.S. 7A-289.33 which states that once the department of social services has obtained custody of the child, it shall "acquire all of the rights for placement of said child. . . ." It was held that this clause applied to vest custody in defendant and to deprive plaintiffs of standing to challenge defendant's exercise of its rights as legal custodian of the child.

Chief Judge Morris, speaking for the Court, noted the apparent conflict in the general grant of standing to seek custody bestowed in the language of G.S. 50-13.1 and the specific, incontestable award of custody to the department of social services or licensed child-placing agency as set forth in G.S. 7A-289.33. She resolved this conflict by reasoning that since G.S. 50-13.1 is found in Chapter 50 of the General Statutes, which is entitled "Divorce and Alimony," the Legislature must have intended this statute to apply only to those custody disputes arising from a divorce or separation. Thus, plaintiffs as foster parents could not employ this Statute to gain standing to institute a custody proceeding.

[2] While we agree with the conclusion reached by the Court of Appeals, we disagree with its rationale. After considering the legislative history of G.S. 50-13.1, we find that the Court of Appeals' narrow interpretation of that statute as applying to only those custody disputes arising from a divorce or separation is in error.

G.S. 50-13.1 was enacted as Section 2 of Chapter 1153 of the 1967 Session Laws. Prior to the enactment of Chapter 1153, entitled "An Act to Rewrite the Statutes Relating to Custody and Support of Minor Children," statutes concerning the custody of minor children were found throughout the General Statutes. Section 1 of Chapter 1153 repealed G.S. 17-39 thru G.S. 17-40, which governed habeas corpus proceedings to determine custody and

which were not limited to custody disputes arising out of divorce
or separation. That section likewise repealed G.S. 50-13 and G.S.
50-16, which dealt specifically with custody issues involved in a
divorce or separation. By the enactment of this chapter, the
Legislature clearly sought to eliminate conflicting and inconsist-
ent custody statutes and to replace them with a comprehensive
act governing all custody disputes. *See In re Holt,* 1 N.C. App.
108, 160 S.E. 2d 90 (1968). Had the Legislature intended G.S.
50-13.1 to apply to only those custody disputes involved in a
divorce or separation, it would have expressly so provided, as it
did in the prior statutes G.S. 50-13 and G.S. 50-16. The mere fact
that G.S. 50-13.1 is found in the Chapter of the General Statutes
governing Divorce and Alimony is not sufficient to cause its ap-
plication to be restricted to custody disputes involved in separa-
tion or divorce. Consequently, we find the Court of Appeals'
narrow interpretation of the statute in error.

[3, 4]  We likewise find error in the Court of Appeals' reliance on
G.S. 7A-289.33 as the controlling statute in this case. That statute
sets forth the effects of a court order terminating the parental
rights of a natural parent on the grounds of abuse or neglect of a
minor child. Such a court order is not involved in this case. The
natural parents of the minor child at issue here voluntarily re-
leased their parental rights and surrendered the child to defend-
ant for adoptive placement. They executed written releases of
their rights and consents to the adoption of the child in accord-
ance with G.S. 48-9(a)(1). This case is therefore governed by the
provisions of G.S. 48-9.1, which outline the legal effects of a sur-
render and consent for adoption executed pursuant to G.S.
48-9(a)(1). G.S. 48-9.1(1) provides for the custody of such a child as
follows:

> "The county department of social services which the director
> represents, or the child-placing agency, to whom surrender
> and consent has been given, shall have legal custody of the
> child and the rights of the consenting parties, except in-
> heritance rights, until entry of the interlocutory decree pro-
> vided for in G.S. 48-17, or until the final order of adoption is
> entered if the interlocutory decree is waived by the court in
> accordance with G.S. 48-21, or until consent is revoked within
> the time permitted by law, or unless otherwise ordered by a
> court of competent jurisdiction. A county department of

social services having custody of the child shall pay the costs of the care of the child prior to placement for adoption."

According to the statute, the county department of social services or the child-placing agency to which the child has been surrendered retains legal custody of the child until the occurrence of one of the events specified in the statute. Legal custody never passes to any foster parents charged with the duty of caring for and supervising the child. Foster parents are given only physical custody, which the department or agency having legal custody is free to revoke at any time. There is nothing in the language of the statute which gives foster parents standing to contest the department or agency's exercise of its rights as legal custodian. Custody is vested in the department or agency until the happening of one of the specified events.

Plaintiffs argue that despite the specific provisions of G.S. 48-9.1(1) granting legal custody of the minor child at issue to defendant, they are nevertheless authorized under G.S. 50-13.1 to challenge this statutory grant of custody. We disagree. G.S. 48-9.1 and G.S. 50-13.1 were enacted in the same session of the Legislature. See 1967 N.C. Sess. Laws, ch. 926, s. 1. When the two statutes are construed together, it is apparent that G.S. 50-13.1 was intended as a broad statute, covering a myriad of situations in which custody disputes are involved, while G.S. 48-9.1 is a narrow statute, applicable only to custody of a minor child surrendered by its natural parents pursuant to G.S. 48-9(a)(1). Clearly, G.S. 48-9.1(1) was intended as an exception to the general grant of standing to contest custody set forth in G.S. 50-13.1. Since the circumstances present in the case before us place the case within the purview of G.S. 48-9.1(1), we find that the issue of custody is resolved by the provisions of that statute and plaintiffs are without standing to bring an action seeking custody of the minor child placed in their home by defendant.

[5] We next address the question of whether plaintiffs had standing to file a petition to adopt the minor child placed in their home. Defendant contends that the clause of the foster parent agreement between plaintiffs and defendant which prohibits plaintiffs from initiating any proceedings for the adoption of a child placed in their home without the prior written permission of the supervising agency should be specifically enforced. Since defend-

ant, as the supervising agency, denied plaintiffs' request for permission to seek adoption of the minor child, specific enforcement of the foster parent agreement would deprive plaintiffs of standing to bring their adoption action.

It is well established that in any case involving the adoption of a child, the court's paramount concern is the child's welfare. *Knight v. Deavers*, 531 S.W. 2d 252 (Ark. 1976); *State ex rel. Department of Institutions, Social & Rehabilitative Services v. Griffis*, 545 P. 2d 763 (Okla. 1975). The Court of Appeals emphasized the primary importance of the best interests of the child in a case involving an analogous issue, *In Re Daughtridge*, 25 N.C. App. 141, 212 S.E. 2d 519 (1975). The issue before the Court in *Daughtridge* was whether the Department of Social Services had an absolute right under G.S. 48-9(b) to decide whether a petition for adoption should be granted. The Court found that the Legislature's purpose in enacting the consent requirement under G.S. 48-9(b) was to supply an additional safeguard to the welfare of the child. Consequently, the department will not be allowed to unreasonably and unjustly withhold its consent in a manner inimical to the child's best interests. Due to the overriding importance of protecting the welfare of the child, the Court of Appeals held that the courts shall have the authority to determine whether the department's failure to grant a petition for adoption was unreasonable and unjust. *See also In Re Norwood*, 43 N.C. App. 356, 258 S.E. 2d 869 (1979), *discretionary review denied*, 299 N.C. 121, 261 S.E. 2d 922 (1980). This holding is supported by the courts of other jurisdictions which have ruled upon the issue. *In Re McKenzie*, 197 Minn. 234, 266 N.W. 746 (1936); *State ex rel. Department of Institutions, Social & Rehabilitative Services v. Griffis, supra.*

We find the rationale of the Court in *Daughtridge* applicable to this case. Defendant, by contracting with plaintiffs, sought to retain absolute authority to determine whether plaintiffs could institute an action to adopt a foster child placed in their home. A child cannot be made the subject of a contract with the same force and effect as if it were a chattel. Since the welfare of the child is the controlling factor in an adoption proceeding, any agreement between plaintiffs and defendant concerning the child's adoption is subject to the court's independent judgment as to what is in the best interests of the child. *Accord Knight v.*

*Deavers, supra; In Re McDonald's Adoption*, 43 Cal. 2d 447, 274 P. 2d 860 (1954); *In Re Adoption by Alexander*, 206 So. 2d 452 (Fla. App. 1968). *See also In Re Dionisio R.*, 81 Misc. 2d 436, 366 N.Y. S. 2d 280 (1975). Consequently, defendant cannot by contract seek to deprive plaintiffs, as foster parents, of standing to challenge the reasonableness of defendant's denial of plaintiffs' request to adopt the minor child placed in their home. If the court determines that consent was unreasonably withheld to the detriment of the welfare of the child, plaintiffs may initiate proceedings to adopt the child as if defendant's consent had been given. We agree with the Court of Appeals that the case must be remanded for a determination of whether defendant unreasonably and unjustly withheld its consent.

[6] Plaintiffs finally argue that the Clerk of Superior Court erred in transferring plaintiffs' adoption action to the superior court. G.S. 48-12(a) mandates that "[a]doption shall be by a special proceeding before the clerk of superior court." However, G.S. 1-273 provides:

> "If issues of law and of fact, or of fact only, are raised before the clerk, he shall transfer the case to the civil issue docket for trial of the issues at the next ensuing term of the superior court."

*See In Re Estate of Wallace*, 267 N.C. 204, 147 S.E. 2d 922 (1966). An issue of fact arises whenever a material fact is maintained by one party and controverted by the other. *Johnson v. Lamb*, 273 N.C. 701, 161 S.E. 2d 131 (1968). In the present action, the determination of whether defendant unreasonably withheld its consent to allow plaintiffs to institute an adoption proceeding involves the resolution of a number of factual issues. We therefore find no error in the Clerk of Superior Court's order transferring plaintiffs' adoption action to the superior court.

For the reasons stated above, the decision of the Court of Appeals is

Modified and affirmed.