IN RE KRAUSS

[102 N.C. App. 112 (1991)]

---

IN THE MATTER OF: JOHN MICHAEL KRAUSS, JR. AND GENEVA FRANSICA KRAUSS

No. 908DC211

(Filed 5 March 1991)

1. **Evidence § 33 (NCI3d)— abused and neglected children— hearsay testimony—admissibility**

    In a proceeding to adjudicate two children neglected and abused, there was no merit to respondent's contention that the trial court erred in admitting the hearsay testimony of his children's statements to child abuse experts under Rule 803(24), since petitioner gave respondent the names and addresses of the expert witnesses; respondent had copies of some of the notes made during the sessions with the children; and respondent therefore had adequate notice of the content of the hearsay testimony to prepare to meet the statements.

    **Am Jur 2d, Infants §§ 16, 42; Juvenile Courts and Delinquent and Dependent Children §§ 43, 52, 62.**

2. **Parent and Child § 2.2 (NCI3d)— abused and neglected children—sufficiency of evidence**

    Evidence was sufficient to support the trial court's findings that respondent's two children were abused and neglected where it consisted of testimony by expert witnesses and the children's foster mother that the children told them that respondent had tied the children up and had sexually abused them.

    **Am Jur 2d, Infants §§ 16, 42; Juvenile Courts and Delinquent and Dependent Children § 54.**

3. **Parent and Child § 2.2 (NCI3d)— abused and neglected children — custody in DSS — best interest of children — finding not required in subsequent orders**

There was no merit to respondent's contention that the trial court erred in placing his children with the DSS because the court made no findings of fact that DSS was fit to maintain custody and that it was in the best interests of the children to remain with the Department, since the court had made such findings in earlier proceedings, and once the court has found that a certain custody arrangement is in a child's best interest, it is unnecessary for the court to repeat the same finding in every subsequent order.

**Am Jur 2d, Infants §§ 16, 42; Juvenile Courts and Delinquent and Dependent Children § 55.**

4. **Parent and Child § 2.2 (NCI3d)— child abuse and neglect — removal from parent's home — amendment of petition properly allowed**

The trial court did not err in allowing DSS to amend its petition to allege that both children were neglected within the meaning of N.C.G.S. § 7A-517(21) and that both children were abused within the meaning of N.C.G.S. § 7A-517(1), since the original petition alleged that respondent neglected both children and sexually abused his daughter, and respondent did not show that he was denied notice of the substance of DSS's allegations or a chance to be heard.

**Am Jur 2d, Infants §§ 16, 42; Juvenile Courts and Delinquent and Dependent Children §§ 43, 62.**

APPEAL by respondent from order entered 8 September 1989 by *Judge Joseph E. Setzer, Jr.* in WAYNE County District Court. Heard in the Court of Appeals 20 September 1990.

This case arises from the adjudication of two children as neglected and abused and their subsequent placement with the Wayne County Department of Social Services.

The Wayne County Department of Social Services received a complaint alleging that John Krauss Sr. was abusing his son, John Michael Krauss Jr., and his daughter, Geneva Fransica Krauss. At the time of the complaint, the children were four-and-a-half and three-and-a-half years old respectively. Department of Social

Services workers investigated the complaint and the father agreed to place the children in the custody of the Department. The father then took the children to Georgia without the permission of the Department of Social Services. The Department obtained a non-secure custody order and the children were placed with the Department of Social Services with physical placement with their paternal grandparents. On 13 June 1989, the children were put in foster care on the recommendation of a doctor at North Carolina Memorial Hospital's Clinical Program for the Study of Childhood Maltreatment. The parties also agreed that the professionals at the Clinical Program would evaluate the children.

At trial, the Department of Social Services presented testimony from members of the evaluation team and the children's foster mother. The trial court allowed the witnesses to testify about statements that the children had made to them. At the conclusion of the hearing, the court determined that the children had been abused and neglected by their father and placed the children in the custody of the Wayne County Department of Social Services. Respondent father appeals.

*E.B. Borden Parker for petitioner-appellee.*

*Shelby Duffy Albertson for respondent-appellant.*

EAGLES, Judge.

[1] Respondent contends that the trial court erred in admitting the hearsay testimony of his children's statements to child abuse experts under Rule 803(24). We disagree.

In *State v. Smith*, 315 N.C. 76, 337 S.E.2d 833 (1985), the Supreme Court set out a six-pronged analysis that the trial court must apply to admit hearsay under Rule 803(24). Respondent objects to the admission of this testimony solely on the grounds that he was not given the particulars of the hearsay testimony. He argues that he was not provided with notes about some interviews that the expert witnesses had with the children. The petitioner gave respondent the names and addresses of the witnesses. Respondent had copies of some of the notes made during the sessions with the children. On this record we hold that the respondent had adequate notice of the content of the hearsay testimony to adequately prepare to meet the statements.

[2]  Respondent also argues that the evidence was insufficient to support the following findings of the trial court: (1) that respondent terrorized his children and emotionally damaged them; (2) that respondent committed sexual acts upon both his children; (3) that respondent did not provide proper care, supervision, or discipline for his children; and (4) that the children were neglected and abused within the meaning of G.S. 7A-517(1)(c) and (d). Additionally, the respondent objects to the court's conclusion of law that the children were neglected and abused within the meaning of G.S. 7A-517. After a careful review of the record, we hold that respondent's arguments are without merit.

At the hearing two expert witnesses from the Clinical Program for the Study of Childhood Maltreatment and the children's foster mother testified about statements the children made to them. Three-and-a-half-year-old Geneva told the interviewers that her father wore a vampire costume to scare her and had tied her up. As part of the interview process, the evaluation team worked with Geneva using anatomical dolls. Dr. Mark Everson, an expert in child psychology, testified that Geneva made the following statements during the session with the dolls:

> She said they are laying in my closet and she pulled the daddy doll pants down and then she began squeezing the penis of the daddy doll like this as she kind of looked away and she said I feel his penis and I squeeze it real hard til pee pee comes out and it felt hard and it was very dramatic that she turned her head away like it was distasteful and she was doing this. What did it look like. Her answer was I can't see it because I look like this and she talked about turning her head away as she is doing that. What happened next was the next question. Her answer was John comes in and says he is going to call the police. He says daddy don't touch Genny private parts. What happens next. My daddy pulls up his pants. I pull down my dress and put my panties on. They were inside out. So when she put her panties back on they were inside out and that was an interesting observation on her part and kind of attesting to the validity of what she is saying. Who took your panties off she was asked. My daddy. She was also asked about what daddy was wearing and she described her dad having paint on his face. She said it looked like a mask. It looked like blood. He said it was blood, but it was really just paint. Does your daddy touch you with anything else.

His hair and then she was asked well show what you mean and she showed the daddy doll with it's [sic] head next to the genitals of the little girl doll and then she said he is doing this with his mouth. She opened and closed her mouth of daddy doll face to the genitals of the little girl doll.

Dr. Everson also testified that John said that his father wore a mask to scare him and that his father tied him up when he was bad. As part of the interview, John was taken to his father's house. At his father's house John took a vampire mask and costume, which were consistent with the one he had described, from the closet. Dr. Everson also testified that John talked about his father tickling him with his tongue and John said that his father tickled him on his neck, arm, and genital area.

The children's foster mother testified that Geneva said that her father had touched her vagina and that she had touched his penis. The foster mother also testified that both children said that their father tied them up. The children also engaged in "tongue kissing" with each other and said that their father "tongue kissed" them. Additionally, John said that his father had touched his private parts.

This court has noted that a substantive difference exists between the quantum of proof of neglect and dependency necessary for purposes of termination and for purposes of removal. *In re Evans*, 81 N.C. App. 449, 452, 344 S.E.2d 325, 327 (1986). "The most significant difference is that while parental rights may not be terminated for threatened future harm, the DSS may obtain temporary custody of a child when there is a *risk of neglect* in the future." *Id.* (Emphasis in original.) Here, the petitioner has the burden of proving abuse and neglect by clear and convincing evidence. G.S. 7A-635. The testimony of the experts who interviewed the children and the testimony of the children's foster mother support the trial court's findings. These findings support the conclusion of law that the children were neglected and abused within the meaning of G.S. 7A-517.

[3] Respondent argues that the trial court erred in placing the children with the Department of Social Services because the court made no findings of fact that the Department was fit to maintain custody and that it was in the best interests of the children to remain with the Department. This argument is without merit. The court entered an order on 13 June 1989 where it found that it

was in the best interests of the children to remain in the custody of the Department. Once the trial court has found that a certain custody arrangement is in a child's best interest, it is unnecessary for the court to repeat the same finding in every subsequent order.

[4] Finally, we address respondent's contention that the trial court erred when it allowed the Department of Social Services' motion to amend the petition to allege that both children were neglected within the meaning of G.S. 7A-517(21) and that both children were abused within the meaning of G.S. 7A-517(1). Respondent contends that he did not have notice and a chance to be heard on the amendments to the petition. We disagree. The original petition alleged that respondent neglected both children and sexually abused Geneva. The decision to allow amendments to the pleadings is within the discretion of the trial judge. *Auman v. Easter*, 36 N.C. App. 551, 555, 244 S.E.2d 728, 730 (1978). Respondent has not shown an abuse of discretion, nor has he established that he was denied notice of the substance of the Department's allegations or a chance to be heard.

For the reasons stated, the judgment of the trial court is affirmed.

Affirmed.

Judges JOHNSON and PARKER concur.