IN THE MATTER OF BARRY DUSTIN SWING v. JANICE GARRISON AND ERNEST GARRISON, INTERVENORS/DEFENDANTS APPELLANT

No. 9222DC1298

(Filed 7 December 1993)

**Parent and Child § 25 (NCI4th)— custody of child in DSS—no standing of grandparents to seek custody or visitation**

The provisions of N.C.G.S. § 50-13.1 do not grant grandparents in a Chapter 7A proceeding standing to seek custody or visitation of a child who has been placed in the custody of DSS after the child has been surrendered for adoption by one parent and the parental rights of the other parent have been terminated. N.C.G.S. § 7A-289.33.

**Am Jur 2d, Parent and Child § 26.**

**IN RE SWING v. GARRISON**

[112 N.C. App. 818 (1993)]

Appeal by intervenors/defendants from order entered 4 June 1992 in Davidson County District Court by Judge Jessie M. Conley. Heard in the Court of Appeals 28 October 1993.

*Charles E. Frye III, for petitioner-appellee Davidson County Department of Social Services.*

*Morrow, Alexander, Tash, Long & Black, by C. R. "Skip" Long, Jr., for intervenor/defendant-appellants.*

GREENE, Judge.

Janice Garrison and Ernest Garrison (grandparents), maternal grandparents of Barry Dustin Swing (Dustin), appeal from an order denying their motion for change of custody or visitation, and an independent evaluation of themselves and Dustin. Davidson County Department of Social Services (DSS) cross-assigns as error the trial court's denial of its motion to dismiss the grandparents' motion for change of custody or visitation.

On 29 December 1986, DSS filed a juvenile petition alleging Dustin, age nine months, was an abused and neglected child. The incident of abuse that gave rise to this petition occurred in the home of the grandparents while Dustin and his mother, Dawn Swing, resided in the grandparents' home. Dustin suffered a displaced fracture of the left humerus and a series of bruises to his face and back. Medical examination further revealed a fracture of the left tibia which was in the healing stage and estimated to be approximately two weeks old.

Upon DSS's petition, the trial court, on 13 January 1987, adjudicated Dustin to be a neglected juvenile and placed him in the legal and physical custody of DSS. On 10 February 1987, after review of this matter concerning Dustin, the trial court entered an order continuing legal and physical custody in DSS with temporary placement of Dustin with his maternal uncle and aunt. Because of their inability to continue to provide for Dustin, the trial court placed physical custody with the grandparents on 24 March 1987 while continuing legal custody with DSS. Dustin made an excellent adjustment with the grandparents and was attached to them, according to juvenile orders entered 22 September 1987, 23 February 1988, and 17 June 1988.

Although the grandparents met Dustin's physical needs, the constant conflict in their family between themselves and Dustin's

mother, who resided intermittently with them, was of concern. Despite great efforts by DSS to work with the grandparents and Dustin's mother, including individual therapy, family therapy, weekly family conferences, contracts, and supervised as well as unsupervised visitation, DSS found the entire dysfunctional family could not provide a safe home for Dustin and therefore abandoned efforts to reunify Dustin with his mother and attempted to establish a relationship between Dustin and his biological father, Barry Swicegood. In a report to the court dated 30 August 1988, DSS noted that "[w]e feel that it would not be in [Dustin's] best interest to place [him] with the grandparents at this time because there remains a conflict between the mother and grandparents which has been detrimental to [Dustin] as [he has] witnessed and been involved in several altercations."

On 29 November 1988, the trial court ordered that legal and physical custody of Dustin be with DSS and charged DSS with placement responsibility of Dustin. On 3 July 1989, the court ordered Barry Swicegood and the grandparents to share physical custody of Dustin. The court subsequently amended this arrangement to allow the grandparents visitation with Dustin one weekend each month. The grandparents filed a civil action for custody of Dustin, which was dismissed on 9 November 1989 due to the pending juvenile action.

On 24 January 1990, the grandparents filed a Motion for Change of Custody of Dustin from Barry Swicegood to themselves; however, they withdrew this motion in February, 1990. Because Dustin experienced problems during visitation with his grandparents, culminating in Dustin's being physically abused during a weekend visit with them on 22-24 June 1990, the court stayed all visitation by order dated 5 July 1990.

On 8 January 1991, upon a petition filed by DSS, the court terminated the parental rights of Dustin's mother, Dawn Swing, continued legal and physical custody with DSS, and authorized DSS to give or withhold consent to adoption; however, placement of Dustin continued with his father, Barry Swicegood. On 4 October 1991, DSS filed a new juvenile petition alleging that Dustin was a neglected child due to Barry Swicegood's abuse of Dustin when he displayed defiant and oppositional behavior, and non-secure custody of Dustin was placed with DSS. In November, 1991, the grandparents filed a document titled "Supplemental Pleading to

Motion for Change of Custody," seeking the care, custody, and control of Dustin or visitation should custody remain with DSS, and a motion to intervene in the ongoing juvenile proceeding concerning Dustin. Barry Swicegood executed a Parent's Release, Surrender, and General Consent to Adoption on 2 January 1992.

On 9 January 1992, DSS filed a motion to dismiss the grandparents' motion for custody and visitation which was denied by the trial court. On that same day, their motion to intervene was allowed. On 7 February 1992, DSS voluntarily dismissed the juvenile petition which was filed on 4 October 1991. This matter came on for hearing on January 9, February 7, March 26, June 1, and June 4, 1992 after which the trial court entered an order denying the grandparents' motion for change of custody or visitation and request for an independent evaluation or examination of themselves and Dustin, directing DSS to pursue either long-term foster care or adoption as a permanent plan for Dustin, and prohibiting the grandparents from contacting or communicating with Dustin or filing for an application for a foster home placement or pursuing adoption of Dustin.

---

The issue is whether the provisions of N.C. Gen. Stat. § 50-13.1 grant grandparents in a Chapter 7A proceeding standing to seek custody or visitation of a child who has been placed in the custody of the Department of Social Services after the child has been surrendered for adoption by one parent and the parental rights of the other parent have been terminated.

In 1981, our Supreme Court held that foster parents do not have standing to seek custody of a child placed in their home by the Department of Social Services after both parents of the child have, pursuant to N.C. Gen. Stat. § 48.9(a)(1), surrendered the child to a director of social services or to a licensed child-placing agency and have consented generally to adoption of the child. *Oxendine v. Department of Social Services*, 303 N.C. 699, 707, 281 S.E.2d 370, 375 (1981). The conclusion reached by the Court was based on the language of N.C. Gen. Stat. § 48-9.1(1) which the Court held vested custody "in the department or agency until the happening of one of the specified events" set forth in Section 48-9.1(1). *Id.*

Although the facts in the present case are somewhat different from those in *Oxendine*, a different result is not required. In

*Oxendine*, both parents surrendered the child for adoption. In the present case, one parent surrendered the child for adoption and one parent's parental rights were terminated pursuant to Article 24B of Chapter 7A.

Pursuant to N.C. Gen. Stat. § 7A-289.33, which governs the effects of a termination of parental rights order, if the child had prior to the termination order

> been placed in the custody of . . . a county department of social services . . . and . . . [was] in the custody of such agency at the time of such filing of the petition, . . . that agency shall, upon entry of the order terminating parental rights, acquire all of the rights for placement of said child as such agency would have acquired had the parent whose rights are terminated released the child to that agency pursuant to the provisions of G.S. 48-9(a)(1), including the right to consent to the adoption of such child.

N.C.G.S. § 7A-289.33 (1989). In this case, DSS had custody of Dustin both prior to and at the time of the filing of the petition to terminate the mother's parental rights. Thus, the entry of the order terminating the mother's parental rights vested in DSS the same rights they would have acquired had the child been released pursuant to Section 48-9(a)(1).

Because DSS has acquired all of the rights for placement of Dustin, by virtue of termination of one parent's parental rights and by virtue of the surrender to DSS by the other parent, the grandparents do not have standing "to contest the department['s] . . . exercise of its rights as legal custodian." *Oxendine*, 303 N.C. at 707, 281 S.E.2d at 375.

In so holding, we reject the grandparents' argument that *Oxendine* does not apply because at the time of the filing of their motion for custody or visitation, the father had not yet surrendered Dustin for adoption. The question of standing must be resolved in the context of this case at the time of the hearing of the motion, and at that time, the father had released the child for adoption. *See In re Bishop*, 92 N.C. App. 662, 671, 375 S.E.2d 676, 682 (1989) (trial court correctly considered evidence of events occurring after the filing of the petition to terminate parental rights).

For these reasons, we must sustain the cross-assignment of error by DSS and hold that the trial court erred in denying DSS's

motion to dismiss the grandparents' motion for change of custody or visitation. We therefore vacate the trial court's order and re-mand for entry of an order granting DSS's motion to dismiss the grandparents' motion for change of custody or visitation.

Vacated and remanded.

Judges MARTIN and JOHN concur.