JOHN MICHAEL KRAUSS v. WAYNE COUNTY DEPARTMENT OF SOCIAL SERVICES

No. 25PA97

(Filed 5 December 1997)

**Infants or Minors § 35 (NCI4th)— termination of parental rights—child custody—natural parent—absence of standing**

A natural parent whose parental rights were terminated for abuse and neglect did not have standing to seek custody of his biological children as an "other person" under N.C.G.S. § 50-13.1(a) where the DSS had legal custody of the children when the termination petition was filed and termination was effectuated pursuant to N.C.G.S. § 7A-289.33(1), since that statute is an exception to the general grant of standing to seek custody in § 50-13.1(a).

**Am Jur 2d, Infants §§ 28 et seq.**

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous, unpublished decision of the Court of Appeals, 124 N.C. App. 785, 479 S.E.2d 509 (1996), affirming an order entered by Goodman, J., on 16 April 1996, in District Court, Wayne County, allowing defendant's Rule 12(b)(6) motion to dismiss. Heard in the Supreme Court 10 September 1997.

*G. Nicholas Herman for plaintiff-appellant.*

*Baddour, Parker & Hine, P.C., by E.B. Borden Parker and William D. Orander, III, for defendant-appellee.*

ORR, Justice.

This case addresses whether a natural parent whose parental rights have been terminated for abuse and neglect nevertheless has standing to seek custody of his biological children as an "other person" under N.C.G.S. § 50-13.1(a).

Plaintiff is the natural father of two minor children, John Michael Krauss and Geneva Fransica Krauss. In June 1989, defendant Wayne County Department of Social Services ("DSS") became aware of allegations that plaintiff was abusing his son and daughter. *In re Krauss,* 111 N.C. App. 456, 434 S.E.2d 252 (1993) (unpublished) (*"Krauss II"*). At that time, his son was four and a half years old, and his daughter was three and a half years old. *In re Krauss,* 102 N.C. App. 112, 113, 401 S.E.2d 123, 124 (1991) (*"Krauss I"*). DSS initiated an investigation, and plaintiff thereafter signed a Voluntary Boarding Home Agreement in which he consented to place the children in DSS's legal custody. However, before DSS received physical custody of the children, plaintiff took them to his mother and stepfather's house in Georgia. When DSS learned that plaintiff had removed the children without its permission, it sought and obtained a nonsecure custody order. Plaintiff then promptly surrendered physical custody of the children to DSS.

On 6 June 1989, DSS filed a petition alleging that plaintiff was abusing and neglecting the two children. *Krauss II,* 111 N.C. App. 456, 434 S.E.2d 252. At the abuse and neglect hearing, DSS presented evidence revealing that plaintiff had terrorized, neglected, and sexually molested his children. *Krauss I,* 102 N.C. App. at 115-16, 401 S.E.2d at 125-26. Testimony from the children and other sources revealed that plaintiff would wear a vampire costume and tie the children up to scare them. *Id.* at 115-16, 401 S.E.2d at 125. He would also commit sexual acts upon the children, including "tongue kissing" and performing oral sex on them. *Id.* at 116, 401 S.E.2d at 125. Based on this as well as other evidence, the trial court entered an order on 8 September 1989 adjudicating both children to be abused and neglected pursuant to N.C.G.S. § 7A-517. *Id.* at 113-14, 401 S.E.2d at 124. Plaintiff appealed this order, and the Court of Appeals affirmed the trial court's decision. *Id.* at 117, 401 S.E.2d at 126.

**KRAUSS v. WAYNE COUNTY DSS**

[347 N.C. 371 (1997)]

While the abuse and neglect hearing was pending appeal, DSS filed a petition on 15 November 1989 seeking to terminate plaintiff's parental rights. *Krauss II*, 111 N.C. App. 456, 434 S.E.2d 252. A parental termination hearing was held at the 29 May 1990 Civil Session of Wayne County District Court. *Id.* Based on the same evidence which was presented at the abuse and neglect hearing, the trial court entered an order on 9 October 1991 terminating plaintiff's parental rights for neglect and continuing custody of the children with DSS with full placement rights. *Krauss v. Wayne County Dep't of Social Servs.*, 124 N.C. App. 785, 479 S.E.2d 509 (1996) (unpublished) (*"Krauss III"*).

Plaintiff appealed to the Court of Appeals. The Court of Appeals reversed and remanded the case on the basis that the trial court's findings of fact failed to show whether the court considered if a change in circumstances had occurred between the time plaintiff lost custody and the date of the termination hearing. *Krauss II*, 111 N.C. App. 456, 434 S.E.2d 252. On 7 June 1994, the trial court made additional findings of fact regarding changed circumstances and once again terminated plaintiff's parental rights. This order was not appealed.

On 30 September 1994, plaintiff filed the present action against DSS seeking custody of the two children. In the complaint, plaintiff alleged that a substantial change in circumstances had occurred since 9 October 1991, the date when his parental rights were first terminated, and 7 June 1994, the date when his parental rights were terminated following his appeal. Plaintiff alleged that it was in the best interests of the children that he now be awarded custody.

On 5 December 1994, DSS filed an answer to the complaint. In its answer, DSS made a motion to dismiss the complaint pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure for failure to state a claim upon which relief could be granted. The 12(b)(6) motion was made on the basis that plaintiff did not have standing because his parental rights had previously been terminated for abuse and neglect. On 16 April 1996, the court granted the motion and dismissed the complaint.

Plaintiff appealed, and the Court of Appeals unanimously affirmed the trial court on 17 December 1996. *Krauss III*, 124 N.C. App. 785, 479 S.E.2d 509. Plaintiff then petitioned this Court for discretionary review pursuant to N.C.G.S. § 7A-31, which we allowed on 6 March 1997.

Plaintiff argued to the Court of Appeals that he has standing to seek custody of his two natural children as an "other person" under N.C.G.S. § 50-13.1(a) despite the fact that his parental rights were previously terminated. N.C.G.S. § 50-13.1(a), the statute which authorizes standing to seek custody, provides: "Any parent, relative, or *other person*, agency, organization or institution claiming the right to custody of a minor child may institute an action or proceeding for the custody of such child, as hereinafter provided." N.C.G.S. § 50-13.1(a) (1995) (emphasis added). Plaintiff concedes that he lacks standing to seek custody as a "parent" under N.C.G.S. § 50-13.1(a) due to the fact that his parental rights were terminated and such termination was subsequently effectuated under N.C.G.S. § 7A-289.33. N.C.G.S. § 7A-289.33 provides:

> An order terminating the parental rights completely and permanently terminates all rights and obligations of the parent to the child. . . .

> (1) If the child had been placed in the custody of . . . a county department of social services . . . and is in the custody of such agency at the time of such filing of the petition . . ., that agency shall, upon entry of the order terminating parental rights, acquire all of the rights for placement of said child as such agency would have acquired had the parent whose rights are terminated released the child to that agency pursuant to the provisions of G.S. 48-9(a)(1). . . .

N.C.G.S. § 7A-289.33 (1995) (effective until 1 July 1996). N.C.G.S. § 48-9(a)(1), the adoption statute invoked by N.C.G.S. § 7A-289.33(1), details when consent for adoption may be given by persons other than the child's parents, including when a county DSS may consent to the adoption of a child.

The Court of Appeals concluded that plaintiff lacked standing as an "other person," relying primarily on *Kelly v. Blackwell*, 121 N.C. App. 621, 468 S.E.2d 400, *disc. rev. denied*, 343 N.C. 123, 468 S.E.2d 782 (1996). In *Kelly*, the issue was whether a biological father who had consented to the adoption of his natural children under N.C.G.S. § 48-23(2) could later seek custody of his children as an "other person" under N.C.G.S. § 50-13.1(a). *Id.* at 622, 468 S.E.2d at 400-01. There, the biological father had consented to the adoption of his children by their stepfather. *Id.* at 621, 468 S.E.2d at 400. After learning that the stepfather was allegedly abusing the children, the biological father attempted to regain custody. *Id.* at 622, 468 S.E.2d at 400. The

*Kelly* court explained that N.C.G.S. § 48-23(2), the statute delineating the legal effects of adoption, expressly stated that a natural parent of the person adopted is " '*divested of all rights with respect to such person*' " after consenting to the adoption. *Id.* (quoting N.C.G.S. § 48-23(2) (1991) (superseded by N.C.G.S. § 48-1-106(c)) (1995)). N.C.G.S. § 50-13.1(a), on the other hand, requires that "[a] person seeking custody under N.C. Gen. Stat. § 50-13.1 *must be able to claim a right* to such custody." *Id.* at 622, 468 S.E.2d at 401 (emphasis added). The biological father, therefore, did not have standing as an "other person" pursuant to N.C.G.S. § 50-13.1(a) because he had been "*divested of all rights*" under N.C.G.S. § 48-23(2).

In the case *sub judice*, the Court of Appeals held that N.C.G.S. § 7A-289.33, the statute which addresses the legal effects of a termination order, similarly divested the plaintiff of any "right" to seek custody. *Krauss III*, 124 N.C. App. 785, 479 S.E.2d 509. The Court of Appeals reached this conclusion on two separate grounds. First, the court explained that N.C.G.S. § 7A-289.33 expressly provides that the termination of parental rights " '*completely and permanently terminates all rights and obligations of the parent to the child.*' " *Id.* The court reasoned that the "rights" referred to in this statute necessarily included the right to seek custody after the termination of parental rights. Second, the court explained that plaintiff also relinquished any "right" to seek custody because DSS had legal custody of the children pursuant to N.C.G.S. § 7A-289.33(1). That subsection of the statute provides that if DSS has custody of the child when the termination petition is filed, DSS acquires the same rights regarding placement of the child as if the child had been surrendered for adoption pursuant to N.C.G.S. § 48-9(a)(1) (superseded by N.C.G.S. § 48-3-601 (1995), effective 1 July 1996).

For the reasons which follow, we hold that the Court of Appeals correctly determined that plaintiff does not have standing to seek custody of his biological children as an "other person" under N.C.G.S. § 50-13.1(a). Consequently, we affirm the decision of the Court of Appeals.

In *Oxendine v. Catawba County Dep't of Social Servs.*, 303 N.C. 699, 281 S.E.2d 370 (1981), we addressed whether the plaintiff foster parents had standing as an "other person" pursuant to N.C.G.S. § 50-13.1(a) to seek custody of their foster child, Jeffrey. Jeffrey was placed with his foster parents when he was about five weeks old. *Id.* at 700, 281 S.E.2d at 371. His biological parents had "executed writ-

ten releases of their rights and consent[ed] to . . . [his] adoption" under N.C.G.S. § 48-9(a)(1). *Id.* at 706, 281 S.E.2d at 375. After caring for Jeffrey for almost one year, the foster parents requested consent from DSS to adopt him. *Id.* at 700, 281 S.E.2d at 371. When DSS denied the request, the foster parents filed an action seeking permanent custody. *Id.* at 700-01, 281 S.E.2d at 371-72. The foster parents argued that they had standing to seek custody as an "other person" pursuant to N.C.G.S. § 50-13.1(a). *Id.* at 704, 281 S.E.2d at 373.

In *Oxendine*, we held that the result was governed by N.C.G.S. § 48-9.1(1), the statute which then detailed the legal effects of consenting to adoption under N.C.G.S. § 48-9(a)(1). *Id.* at 706, 281 S.E.2d at 375. At that time, N.C.G.S. § 48-9.1(1) provided in part:

> The county *department of social services* which the director represents, or the child-placing agency, *to whom surrender and consent has been given, shall have legal custody of the child and the rights of the consenting parties* . . . until entry of the interlocutory decree provided for in G.S. 48-17, or until the final order of adoption is entered . . . or until consent is revoked. . . .

N.C.G.S. § 48-9.1(1) (1991) (emphasis added) (superseded by N.C.G.S. §§ 48-3-502, 48-3-705 (1995), effective 1 July 1996). Based on this language, we concluded that the county DSS to which the child is surrendered retains legal custody of the child until one of the listed events occurs. *Oxendine*, 303 N.C. at 707, 281 S.E.2d at 375. Thus, legal custody did not transfer to the foster parents at any point in time. The foster parents did not have standing "to contest the department or agency's exercise of its rights as legal custodian." *Id.*

Although DSS had legal custody under N.C.G.S. § 48-9.1(1), the foster parents argued that they had standing under N.C.G.S. § 50-13.1(a). We disagreed. *Id.* The Court stated:

> G.S. 48-9.1 and G.S. 50-13.1 were enacted in the same session of the Legislature. *See* 1967 N.C. Sess. Laws, ch. 926, s. 1. When the two statutes are construed together, it is apparent that G.S. 50-13.1 was intended as a broad statute, covering a myriad of situations in which custody disputes are involved, while G.S. 48-9.1 is a narrow statute, applicable only to custody of a minor child surrendered by its natural parents pursuant to G.S. 48-9(a)(1). Clearly, G.S. 48-9.1(1) was intended as an exception to the general grant of standing to contest custody set forth in G.S. 50-13.1.

*Id.* Thus, we held that the foster parents did not have standing to seek custody of Jeffrey because N.C.G.S. § 48-9.1(1) was an exception to N.C.G.S. § 50-13.1. *Id.*

In the case *sub judice*, plaintiff's parental rights were terminated for abuse and neglect, and such termination was effectuated pursuant to N.C.G.S. § 7A-289.33. N.C.G.S. § 7A-289.33(1) provides that if DSS has custody of the child prior to entry of the termination order, then DSS "*acquire[s] all of the rights for placement of said child as such agency would have acquired had the parent whose rights are terminated released the child to that agency pursuant to the provisions of G.S. 48-9(a)(1), including the right to consent to the adoption of such child.*" N.C.G.S. § 7A-289.33(1) (emphasis added). According to this statute, DSS retains legal custody of the child if the child has been placed with DSS when the termination petition was filed. If DSS has custody of the child at that time, then with the entry of the termination order, DSS acquires the same rights that it would have acquired if the parent had consented to the adoption of that child under N.C.G.S. § 48-9(a)(1).

Under *Oxendine*, a parent who has consented to the adoption of his child no longer has standing to subsequently seek custody of that child. This result is required because, as we stated in *Oxendine*, N.C.G.S. § 48-9(a)(1) is narrowly drawn to address a specific custody situation and is therefore intended to be an exception to the general grant of standing provided in N.C.G.S. § 50-13.1(a). *Oxendine*, 303 N.C. at 707, 281 S.E.2d at 375. Thus, it follows that since N.C.G.S. § 7A-289.33(1) invokes the application of N.C.G.S. § 48-9(a)(1), subsection (1) of N.C.G.S. § 7A-289.33 is also an exception to the general grant of standing to seek custody under N.C.G.S. § 50-13.1(a). This rationale also applies to the revised subsection (1) of N.C.G.S. § 7A-289.33, effective 1 July 1996, which also references chapter 48, the adoption chapter, and requires that the same rights be acquired in this specific situation.

In analyzing these two statutes, the Court of Appeals came to a similar conclusion in *Swing v. Garrison*, 112 N.C. App. 818, 436 S.E.2d 895 (1993). In *Swing*, the Court of Appeals held that the grandparents who were seeking custody and visitation of their grandchild did not have standing under N.C.G.S. § 50-13.1. *Id.* at 822, 436 S.E.2d at 898. There, the child had been placed in the custody of DSS after the parental rights of the biological mother had been terminated and the biological father had consented to the adoption of the child. *Id.* at

820-21, 436 S.E.2d at 897. The Court of Appeals stated that DSS had custody of the child "both prior to and at the time of the filing of the petition to terminate the mother's parental rights. Thus, the entry of the order terminating the mother's parental rights vested in DSS the same rights [it] would have acquired had the child been released pursuant to Section 48-9(a)(1)." *Id.* at 822, 436 S.E.2d at 898. Relying on *Oxendine*, the court explained that "[b]ecause DSS has acquired all of the rights for placement of [the child], by virtue of termination of one parent's parental rights and by virtue of the surrender to DSS by the other parent, the grandparents do not have standing 'to contest the department['s] . . . exercise of its rights as legal custodian.' " *Id.* (quoting *Oxendine*, 303 N.C. at 707, 281 S.E.2d at 375) (alteration in original). This decision, while not expressly recognizing that N.C.G.S. § 7A-289.33(1).is an exception to N.C.G.S. § 50-13.1(a), comports with the reasoning behind our decision today.

In addition, interpreting N.C.G.S. § 7A-289.33(1) as an exception to the general grant of standing provided in N.C.G.S. § 50-13.1(a) gives effect to legislative intent. In *Oxendine*, we reasoned that N.C.G.S. § 48-9.1(1) was a narrow statute which was intended to apply only to custody situations where consent for adoption had been given. N.C.G.S. § 7A-289.33(1) is also a narrow statute, intended to apply only to situations where DSS has custody and the parents' rights are later terminated. Both statutes also address the beginning stages of a custody determination where adoption is specifically involved. Under both statutes, DSS is given legal custody of the child. This is merely a necessary step in the overall adoption process. Under both provisions, DSS is also given authority to place the child for adoption at some point in time if certain contingencies do not occur. Thus, these two provisions should be read in a similar manner since both provisions narrowly address custody situations where DSS has custody of the child and is placing the child for adoption.

Unlike these two statutes, N.C.G.S. § 50-13.1(a) is a "general statute" addressing all potential custody cases. *McIntyre v. McIntyre*, 341 N.C. 629, 631, 461 S.E.2d 745, 748 (1995). " 'Where there is one statute dealing with a subject in general and comprehensive terms, and another dealing with a part of the same subject in a more minute and definite way, the two should be read together and harmonized . . .; but, to the extent of any necessary repugnancy between them, the special statute . . . will prevail over the general statute. . . .' " *Id.* at 631, 461 S.E.2d at 747 (quoting *National Food*

*Stores v. N.C. Bd. of Alcoholic Control,* 268 N.C. 624, 628-29, 151 S.E.2d 582, 586 (1966)). Thus, N.C.G.S. § 7A-289.33(1), the more specific statute like N.C.G.S. § 48-9.1(1), must be given effect despite the broad mandate provided by N.C.G.S. § 50-13.1(a).

Finally, it should also be noted that the broad grant of standing in N.C.G.S. § 50-13.1(a) does not convey an absolute right upon every person who allegedly has an interest in the child to assert custody. As we stated in *Petersen v. Rogers,* 337 N.C. 397, 406, 445 S.E.2d 901, 906 (1994), "N.C.G.S. § 50-13.1 was not intended to confer upon strangers the right to bring custody or visitation actions against parents of children unrelated to such strangers. Such a right would conflict with the constitutionally-protected paramount right of parents to custody, care, and control of their children." N.C.G.S. § 50-13.1(a) must operate within these confines and thereby promote the best interests of the child in all custody determinations.

Application of the foregoing rule to the present case requires a finding that plaintiff lacks standing as an "other person" under N.C.G.S. § 50-13.1(a). DSS had legal custody of plaintiff's natural children when the termination petition was filed on 15 November 1989. *Krauss III,* 124 N.C. App. 785, 479 S.E.2d 509. DSS, in fact, has had legal custody of the two children since June 1989. Plaintiff's situation is thus governed by N.C.G.S. § 7A-289.33(1). Since N.C.G.S. § 7A-289.33(1) is an exception to the general grant provided under N.C.G.S. § 50-13.1, plaintiff lacks standing to seek custody of his natural children.

For the foregoing reasons, the decision of the Court of Appeals is affirmed.

AFFIRMED.